court held the contrary. We adhere to this later jurisprudence.

Motion overruled.

(69 South. 271)

No. 20135.

LANDRY et al. v. DUPLANTIS et al.

(June 28, 1915.)

*(Syllabus by the Court.)*

1. APPEAL AND ERROR ☜1008—JUDGMENT—EVIDENCE—CONTRIBUTORY NEGLIGENCE.

Contributory negligence is largely a question of fact, and on such an issue the judgment below will be affirmed, when not contrary to the preponderance of the evidence.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3955–3960, 3962–3969; Dec. Dig. ☜1008.]

2. NAVIGABLE WATERS ☜20—VESSELS—COLLISION WITH DRAWBRIDGE.

Where a police jury ordinance provided that drawbridges on certain bayous should remain open during the night, but might be temporarily closed at night for the purpose of crossing, the navigator of a lugger approaching one of such bridges on a very dark night has no right to assume that the draw is open.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 73–99; Dec. Dig. ☜20.]

Appeal from Twentieth Judicial District Court, Parish of Terrebonne; W. P. Martin, Judge.

Action by Omer Landry and others against Terrence Duplantis and others. From judgment for defendants, plaintiffs appeal. Affirmed.

Calvin Wurzlow, of Houma, for appellants. Briant & Guedry, of Houma, for appellees.

LAND, J. The plaintiffs are Omer Landry and his wife, who sued the numerous defendants, as alleged owners of a certain bridge over Bayou Little Caillou, in the parish of Terrebonne, for a large amount of damages, on a cause of action, which, as alleged, may be briefly stated as follows:

Omer Landry is a fisherman, who had been engaged for a number of years in boating oysters and fish from the coast of Terrebonne parish to Houma, La., by way of Bayous Terrebonne and Little Caillou, both navigable streams in said parish.

About 3:30 o'clock a. m. on February 8, 1911, the said Landry was pursuing his usual course to Houma through Bayou Little Caillou in his lugger laden with oysters, the said boat being propelled by a gasoline motor, and having on board his wife, their three children, and a helper, when the said lugger struck an unopened bridge spanning the said bayou, which was left closed negligently, through the fault of the defendants; that the collision broke the top of the boat, and burst open a tank containing gasoline, which, being ignited by a lighted lamp caused an explosion which enveloped the boat in flames; that the said Landry, his wife, and their three children were severely burned; that their two little girls died about four hours after receiving the injuries, and their infant boy remained under medical treatment for more than two months.

The petitioners represented that an ordinance of the police jury of said parish required that the bridges spanning said bayou should be left open at night, and that petitioners assumed that the law had been complied with; that there was no reason to believe that said bridge was closed, the night was dark and foggy, no light was on the bridge, and before the petitioners could discover their peril the boat struck the bridge; that the law requiring the opening of said bridge at night had been complied with in every other instance except this one, to the knowledge of petitioners, who were without fault or negligence.

Petitioners alleged damages to the amount of $26,000, for loss of boat, for death of their two children, and for sufferings of parents and children.

The defendants' answers were practically the same. They all deny control or manage-

ment of the bridge at the time of the accident, aver that the bridge was open on the night in question, and that the accident was caused by the carelessness and contributory negligence of the plaintiffs, and could easily have been avoided if the plaintiffs had taken the usual and proper precautions on approaching the bridge.

There was judgment in favor of the defendants, and the plaintiffs have appealed.

[1, 2] In his reasons for judgment the judge a quo, after reviewing the evidence, reached the conclusion that the testimony of the plaintiff Omer Landry showed that he was guilty of negligence in approaching the bridge in question.

The police jury ordinance referred to provided that all bridges over Bayous Terrebonne and Little Caillou "shall be kept open and remain open from two hours after sundown to one hour after sunrise, and during that time said bridges shall not be closed except for actually crossing thereon, after which they are to be again opened." The ordinance further provided that all owners and lessees of bridges violating any of the provisions thereof shall be guilty of a misdemeanor, and upon conviction shall be fined, etc.

Mr. Wilson, witness for the plaintiffs, testified that, as a rule, the bridge was always opened at 6 p. m., and was opened at that hour on the evening before the accident.

A number of witnesses stated that the bridge was open at the time of the accident. Others stated that it was closed.

We gather from Mr. Wilson's testimony that no tolls were charged, that the bridge was seldom locked, and that it was opened or closed at the call of any person desiring to pass or to cross. Under the police jury ordinance the bridge might have been temporarily closed at night for the purpose of crossing. The plaintiff Omer Landry knew that no lights were kept on the bridge in question.

At the time of the accident plaintiff was standing in the stern of the boat, steering with his feet, and his helper was within a few feet of him "sweetening" coffee. No one was at the wheel or at the engine, and the boat was making five miles an hour. There was no lookout at the bow. Plaintiff testified that he did not see the bridge until his boat was within six feet of that structure, and then it was too late to avoid a collision. According to the allegations of the petition, plaintiff for "a number of years" must have passed his boat through the opening of that bridge in pursuing "his usual course going to Houma." He must have known the location of the bridge, that it was not lighted, and, if the night was too dark for him to see such a structure until too late to avoid it, common prudence dictated a slow and careful approach. The opening was very narrow, and, according to Mr. Wilson's testimony, a safe passage in daylight required "strict attention" on the part of the navigator.

We make the following extracts from the opinion of the judge a quo:

"If, as he would have us believe, he was depending on the observance by all bridge owners of the regulation requiring all bridges to be opened during the night, he then knew that this same ordinance gave the owners the right to close their bridges during the night for the purpose of actually crossing, and, knowing this, it was his manifest duty to at least slow down, if not stop, his boat for the purpose of learning whether the bridge was open, and whether it would be safe for him to proceed on his course. Instead of doing this, however, this plaintiff admits that he was standing on the rear end of his boat, steering it with his feet, with no one in front of the boat, looking out for danger that must have been anticipated, * * * and with no one at or near the gasoline engine prepared and ready to stop the speed of the boat in case of danger or threatened accident. "Care in going through the abutments of drawbridges is required even in daytime, and certainly additional care is required when approaching a bridge at night."

The judge below cited Thompson's Law of Negligence, vol. 6, § 6898, as follows:

"It is the duty of the officers of a vessel when approaching a bridge to use reasonable care to avoid a collision with the structure. They are

bound to keep the vessel under complete control, and move at such a rate of speed that the vessel may be easily stopped; and when for any reason the view is obstructed, it is the duty of the vessel to stop until the bridge can be approached with safety."

Contributory negligence is largely a question of fact, and on the record before us we are not prepared to reverse the findings of the court below.

Judgment affirmed.

O'NIELL, J., concurs in the decree.