## ROY v. MUTUAL RICE CO. OF LOUISIANA, Inc.

### No. 1004.

Court of Appeal of Louisiana.   First Circuit.
Oct. 5, 1932.

St. Clair Adams, Jr., and St. Clair Adams, both of New Orleans, for appellant.

Gremillion & Smith, of Crowley, for appellee.

MOUTON, J.

While plaintiff was working in the rice mill of defendant company, his foot and lower part of his leg were caught on a revolving shaft and were badly mangled and crushed.

He alleges that while performing the duties for which he was employed he had climbed a ladder leading to a narrow platform to disentangle a belt that operated on a glucose machine, when his foot was caught, which resulted in the injury above stated.

Under the foregoing allegations he is claiming $10,150 damages for his injuries and sufferings under article 2315, Civil Code, and the general damage laws of the state. He avers also that as he was only sixteen years and nine months old on October 4, 1929, when he was injured, being then under the age of eighteen years, and not having elected to come under the provisions of the Employers' Liability Act of 1914, and the amendments thereto, that its provisions have no force or effect over his complaint.

In the alternative, he alleges that should the court hold that his demand is controlled by the provisions of the Employers' Liability Act, that he be awarded compensation under that act. He accordingly prays for judgment for $10,150 for damages under Civ. Code, art. 2315, and in the alternative for compensation under the Employers' Liability Act (Act No. 20 of 1914 as amended).

In this court defendant company, as it had the right to do, filed an exception alleging that plaintiff had no cause of action, either under the general tort law of Louisiana embodied in article 2315, Civil Code, or under the Employers' Liability Act of 1914, as variously amended.

In his petition plaintiff alleges that he was married at the time he was injured.

Civil Code, art. 376, reads as follows:

"The emancipated minor who is engaged in trade, is considered as having arrived at the

age of majority, for all the acts which have any relation to such trade."

In referring to the provisions of that article, counsel for defendant say in their brief as follows:

"Our law has, therefore, emancipated minors who are married from all disability with reference to contracting for all acts having any relation to the trade in which the minor is engaged. Therefore, the plaintiff in this case, on the day he was employed by defendant, had the power to contract for himself with reference to his employment. Such being the case, the provisions of the compensation law, section 3, sub-section 3 was applicable and it must be presumed that the contract of employment was made subject to the provisions of the compensation law."

As plaintiff was married at the time of his employment and injury, the contention of counsel is that he had been liberated from all the disabilities of minority; that his demand had to be prosecuted under the Compensation Law, and could not be injected in this suit under the general damage laws of this state.

Their contention is, however, that plaintiff in his petition has not followed the requirements of the compensation statute, and that no legitimate judgment could be rendered on the pleadings filed by him so as to give him compensation, should he be entitled thereto.

These contentions of counsel for defendant cannot, however, have any effect, unless it appears that plaintiff, who was an emancipated minor by marriage, was, in rendering his services, engaged in a trade and that his acts had "relation to such trade."

Counsel for defendant in their brief, in giving the definition of a trade, say:

"The business of a particular mechanic; hence boys are said to be but apprentices to learn a trade; as the trade of a carpenter, shoemaker and the like."

The foregoing definition is in line with the usual definition of what a trade is, and to which we find it unnecessary to refer. In this case it is shown that plaintiff was employed on the first floor of the defendant's mill. Mr. Lafleur, the assistant miller under whom he was working, says that the instructions he gave plaintiff for "his work were to oil and sweep, to mix the glucose and to take care of the chicken feed." Evidently, oiling the machinery, sweeping the floor of the mill, mixing glucose, and taking care of chicken feed required no special training, and fell within the duties of a common laborer. Plaintiff was therefore engaged in no trade and was doing no act in relation to a trade when the accident happened, was not liberated from the disabilities affecting minors, under article 376, Civil Code, which compelled him to bring his action for compensation under the Employers' Liability Act, as contended for by counsel for defendant company.

He had no cause of action under that statute for having failed to make the proper election, as is alleged in article 6 of his petition, and so admitted by defendant in its answer to that article.

The brief of counsel for defendant is directed altogether in support of their contention that, if plaintiff had any right of action, it should have been brought under the provisions of the Employers' Liability Act, and makes no reference to the exception that he has no cause of action under article 2315, Civil Code.

We find no reason why plaintiff should not have a cause of action under the provisions of that article, upon which judgment was rendered in his favor by the district judge.

The exception that plaintiff has no cause of action under article 2315, Civil Code, is therefore overruled.

### Merits.

Plaintiff applied for work at defendant's mill to Mr. Istre, who was then head miller there. Istre first refused to employ him, stating he was too young. Thereafter, after saying that he was married, Lafleur, the assistant miller, gave him employment on the first floor of the mill. At the time of his employment plaintiff was about sixteen years and six months, although he stated then that he was seventeen years old.

The fact that he was married did not make him any older, and evidently he seemed quite young to his employer, who, at first, refused to employ him because of his youth. Plaintiff, as far as the record discloses, at that time, had never worked in a mill, had had no experience in handling machinery, was quite immature, and entirely inexperienced in the line of work to which he was assigned.

Plaintiff testifies that as part of his work, Lafleur, under whom he was working, had given him a glove with which he was instructed to put on the pulley.

Arabee, who had preceded plaintiff in the work required on the first floor of the mill where plaintiff had been assigned, testifies that he had also been instructed to put the belt on and to take it off from the pulley and to use a glove for that purpose. It is shown by witnesses for defendant that putting a belt on a pulley by hand is quite easy to do and is not dangerous.

Lafleur denies that he had given the leather glove to plaintiff and had shown him how to put it on the pulley. As this operation was simple and involved no danger, we do not see any reason why we should doubt that plaintiff had been directed to place the belt on the

pulley, as testified to by him, and as Arabee, according to his testimony, had been previously instructed.

Plaintiff testifies that when he was put to work by Lafleur, he was given the following instructions: "If anything breaks come and tell me and if anything go wrong that you think you can fix, fix it and if you can not fix it come and tell me," and that he did not single out anything which might go wrong.

Arabee was asked, when employed, if he was not instructed if anything went wrong to report to his superior. His answer to that question is as follows: "They said if anything breaks; they never said if anything about going wrong." He says, also, he was not instructed "not to fool with any of the belts."

Lafleur says, when he hired plaintiff that he told him, "In the event anything happened to notify him immediately."

Istre says, when plaintiff was employed he told him not to fool with any belts that came off, his job was to oil and sweep and tend to the chicken feed, and that if any belts came off to run to the second floor and tell Mr. Lafleur.

The testimony of plaintiff is that he was directed to put the belt on the pulley as is hereinabove stated, and was never instructed not to have anything to do with the belts.

Counsel for defendant say that plaintiff is the only witness who contradicts the testimony of Istre and Lafleur as to the instructions and warnings given him.

Counsel for plaintiff say that plaintiff had a patent interest in contradicting that testimony and refer in connection with that remark to article 2282, Civil Code, which says: "A party being interested in the result of a suit is not a sufficient cause to disqualify him but may, according to circumstances, diminish the extent of his credibility." This article, it must be observed, places in the same category witnesses "in the actual service or salary of the parties" to the suit. Here, it is certain that Istre, miller for defendant company, and Lafleur, his assistant, were in the service of the party defendant, and, it is not rash to infer, were each receiving a salary for their services. Hence, in so far as the diminishing of the credibility of these witnesses may be affected by the provisions of that article, they must all three be placed on the same footing.

It is therefore logical for us to refer to the testimony of Arabee who had served defendant company in the same employment. His testimony is that he never was instructed not to have anything to do with the belts, and was told, not if anything went wrong, but if anything "broke," to report to his superiors. It is reasonable to infer that as he had been employed to render the same serv-ices which were required of the plaintiff, that he had received similar instructions, and his testimony indicates that they were substantially the same, and were not accompanied with any warnings not to "fool" with the belts upon which Istre and Lafleur say plaintiff had been specifically instructed.

Because of this corroborative testimony of plaintiff's testimony by Arabee, we find that plaintiff was given the instructions by Lafleur, as testified to by him, and hereinabove quoted from his testimony.

The record shows that a belt had been wrapped around a revolving shaft; that plaintiff tried to grab it to untangle or unwrap it, when his foot and lower part of his leg were caught in the belt and were crushed. The wrapping of this shaft with the belt had only occurred two or three times during a period of five or six years prior thereto, as appears from the evidence of Istre and Lafleur. Plaintiff, who had been in the service about two months at the time of the accident, had never seen this belt so tangled up with this revolving shaft, and had never heard of such an occurrence.

The evidence shows that the shaft goes at the rate of 300 revolutions a minute, but of this plaintiff was unaware, as appears from his testimony. It is also shown that it is extremely dangerous to attempt to disentangle a belt from a shaft spinning around at that rate of speed. Plaintiff was, however, unaware of the rapidity with which the shaft was turning around and very probably failed to realize how fast it was turning from the fact that the belt which was flapping on the shaft was spinning at a much slower speed. Plaintiff was young and inexperienced, and evidently saw no obvious or apparent danger that would result if he attempted to disengage the belt from the shaft. He said he grabbed at the belt to disentangle it thinking that he was doing so in the discharge of his duties.

In the case of Le Blanc v. United Irrigation & Rice Milling Company, 129 La. 196, 55 So. 761, 762 the court said:

"It is not sufficient for the master merely to instruct a new workman, with no experience around machinery, of the working of the machinery, but he must point out to him the danger connected with his employment, not in a perfunctory manner, but in a manner that is both instructive and impressive."

The instructions by Lafleur to plaintiff were that if anything breaks, "tell me," and if it goes wrong, "fix it if you think you can." To Arabee, who had preceded plaintiff in his job, the order was for him to report to his superiors, if some "break" occurred.

In the instructions to plaintiff no dangers connected with his employment were pointed out even in a "perfunctory manner," and

nothing was said which could be characterized as "instructive and impressive."

If anything went wrong where he was working, plaintiff was directed to fix it if he could, and if he could not, his instructions were to report to Lafleur.

Evidently, when he attempted to disentangle the belt from the revolving shaft, he thought the thing could be fixed or arranged in that way and was, as testified to by him, prompted by the desire to discharge his duties.

In the case of Rossey v. Lawrence & Hamilton, 123 La. page 1053, 49 So. 704, 17 Ann. Cas. 484, the court said:

"It is the duty of the master to give to his servant, a minor of immature years, such instructions and warning of the dangers incidental to the employment as may reasonably enable him to understand its perils and to avoid them."

In that case it is true the minor injured and referred to as being of immature years was only thirteen years of age, while here he was over sixteen and had not reached his seventeenth year. Although plaintiff in this case was married and was liberated from the usual legal disabilities affecting minority, still he was, when injured, in that immature period of life which entitled him 'to the warning by his master of the "dangers incidental to his employment as could have reasonably enabled him to understand its perils and to avoid them," an essential requirement in such cases, as was clearly expressed in the case above cited.

In referring to the warning necessary in such cases even when inexperienced men are assigned work, and no question of minority is considered, we find the following expression in the case of Daly v. Kiel, 106 La. 170, 30 So. 254:

"The warning required to be given is an unequivocal one. It should not be left to inference. The situation should be explained, the danger pointed out, and the employee cautioned to be on his guard."

No dangers were pointed out unequivocally or otherwise to plaintiff when he was employed or thereafter before his injury, and he was certainly not cautioned to be on his guard against any perils incidental to his work and which could have been inferred from the instructions he had received, or from the character of his employment.

In the case of Daly v. Kiel, cited above, the court also said:

"One cannot be understood as contracting to take upon himself risks which are not apparent, and of which he has not been informed or warned against at the time of his employment."

The only risks the employee takes are those which are apparent or obvious, as appears from the rule recognized in the above citation.

The danger of attempting to disentangle the flying belt from the revolving shaft might have been apparent or obvious to an experienced workman or to a man that had passed the immature period of life; but as we have hereinabove explained, considering the age of plaintiff at the time, the character of the work assigned to him, and his manifest inexperience, the removing of the belt did not so appear to him. He had been instructed that if anything "broke" he should tell Mr. Lafleur. Evidently, the order to inform his superior of any "breaks," which was also the instruction given Arabee, could have no reference to the flapping of the belt, and plaintiff could not be held to have violated his instructions in not notifying Lafleur of that incident. The other part of his instructions was if anything went wrong, to fix it, and if he could not, to make his report. He evidently thought he could remedy the situation by disentangling the belt, and in trying to fix it, his leg was caught which caused the unfortunate accident. Under his instructions it cannot be said he was at fault in so acting.

Plaintiff did not receive the warning which should have been given him, and we therefore find that defendant company was properly held liable in damages.

Judgment affirmed.