149 So. 508

## ROY v. MUTUAL RICE CO. OF LOUISIANA, Inc.

No. 32194.

May 29, 1933.

Rehearing Denied July 7, 1933.

St. Clair Adams and St. Clair Adams, Jr., both of New Orleans, for applicant.

Gremillion & Smith, of Marksville, for respondent.

LAND, Justice.

Plaintiff, a married man of the age of 16 years, 7 months, and 20 days, was employed by defendant company, and was injured while

performing the duties for which he was employed.

He instituted suit under article 2315 of the Civil Code, the general tort law of the state, for the sum of $10,150, and, in the alternative, claimed compensation under the Employers' Liability Act, Act No. 20 of 1914, and amendments thereto, in the sum of 65 per cent. of his weekly wages of $12 per week, during one hundred weeks, or the sum of $780, for the reason that the permanent and impaired condition of the upper half of his leg was not included in the settlement made with him by defendant company for the loss of a foot.

Judgment was rendered in the lower court in favor of plaintiff for damages ex delicto in the sum of $7,500. From this judgment defendant company appealed to the Court of Appeal, First Circuit, and in that court filed an exception of no right or cause of action, either under article 2315 of the Civil Code, or under Act No. 20 of 1914, and amendments thereto.

This exception was sustained by the Court of Appeal, First Circuit, as to the cause of action alleged by plaintiff under the Employers' Liability Act, and the judgment of the lower court was affirmed. 143 So. 668. This judgment is now before us for review under the writ of certiorari granted in this case.

We wish, at the outset, to make it very plain that, in considering the exception of no right or cause of action in this case, the allegations of well-pleaded facts *as set forth in plaintiff's petition* must be taken as true, for the purpose of disposing of this exception, and not the facts found by the Court of Appeal, First Circuit, *in passing upon the merits of the case.*

The petition of plaintiff, in so far as it relates to a right or cause of action under the Employers' Liability Act is as follows:

"The petition of Demosthenes Roy (alias Dem. Roy) a minor over the age of 17 years, *married* on June 29, 1929, to Lucille Touchet, resident of Acadia, State of Louisiana, with respect represents:

"That the Mutual Rice Company of La., Inc., a corporation organized under the State of Louisiana, domiciled at Crowley, in the Parish of Acadia, La., engaged in the rice milling business, is justly and legally indebted unto your petitioner in the sum of $10,-150.00, with legal interest from judicial demand, until paid, for the reasons hereinafter alleged.

"Petitioner alleges that on the 8th day of August, 1929, he then being a minor, 16 years, 7 months and 20 days of age, was employed by Mutual Rice Co. of La., Inc., *to run and operate, see after and care for the Paddy Machine and the Glucose Machine, and other machinery, parts or attachments* located on the first floor of said rice milling company, for the salary of $2.00 per day.

"Petitioner alleges that about 2 a. m. on the 4th day of October, 1929, *while performing the duties for which he had been employed,* he ascended a ladder leading to a narrow platform about 8 feet above the floor of said rice mill, in order to disentangle or straighten out the belt that operated said Glucose Machine; that when said Glucose Machine was not in operation, the belt was permitted to idle or hang on the revolving shaft that

operated said Glucose Machine, and as said belt had begun to wrap and twist around said revolving shaft, petitioner while standing on said narrow, elevated platform, was endeavoring to unwrap and straighten out said belt, when the loop in the end of said belt caught his right foot and leg and wound said right foot and leg around said revolving shaft three times, and that petitioner only saved his life by grabbing a fire extinguisher pipe that was close at hand and thus prevented his body from being twisted around said shaft; that the right leg of petitioner was badly mangled and crushed on account of being wound around said shaft three times; that the bones in his leg from his knee to his ankle were broken in several places, and were badly mangled and crushed, and that the lower part of his leg was amputated about four hours after said injury happened; and that the large bone in his upper leg, from 4 inches above the knee to his hip-joint, was badly mangled and crushed. * * *

"Petitioner alleges that, being a minor under the age of 18 years, he being 16 years, 9 months and 16 days of age on October 4th, 1929, the date he was injured, and not having elected to come under the provisions of the Employer's Liability Act, No. 20 of 1914, and the amendments thereto, as provided by said act, the provisions of said Employer's Liability Act are not binding and of any force and effect against him for the above stated injuries, and that his cause of action herein falls under article 2315 of the Revised Civil Code of the State of Louisiana, and the general damage laws of this State; that on October 4th, 1929, the date of said injuries to petitioner, his father and mother were both dead and no tutor had been appointed unto him, and that the Court did not make said election for him. * * *

"Petitioner alleges, in the alternative, that in the event the Court should hold that petitioner's injuries are controlled and regulated by the provisions of the Employer's Liability Act, No. 20 of 1914, and the amendments thereto, that petitioner be awarded compensation for seriously, permanently impaired condition of the upper half of his said right leg, as alleged and set forth in Article 3 of this petition, in the sum of 65% of his weekly wages of $12.00 per week, during 100 weeks, or the sum of $780.00, for the reason that this seriously permanent and impaired condition of the upper half of petitioner's right leg was not included in the settlement made for the loss of the right foot of petitioner."

It appears therefore that, at the time of plaintiff's injury, he was engaged in running, operating, and looking after machinery on the first floor of the rice milling company, an employment which is, concededly, "a man's job."

Section 1 of Act No. 20 of 1914 provides. "That this act shall apply only to the following: * * * 2. Every person performing services arising out of and incidental *to his employment* in the course of his employer's trade, business or occupation in the following hazardous trades, businesses and occupations: (a) * * * mills, including rice mills * * *."

Under subdivision 3 of section 3 of Act No. 20 of 1914, "Every contract of hiring * * * between any employer or employee engaged *in the trades*, businesses or occupations speci-

fied in paragraph 2 of Section 1, * * * shall be presumed to have been made subject to the provisions of this act, unless there be as a part of said contract an express statement in writing not less than thirty days prior to the accident, either in the contract itself or by written notice by either party to the other, that the provisions of this act other than Sections 4 and 5 are not intended to apply, *and it shall be presumed* that the parties have elected to be subject to the provisions of this act and to be bound thereby." (Italics ours.)

It is provided in subdivision 4 of section 3 of the act that: "Any workman of the age of eighteen and upwards *engaged in the trades*, businesses or occupations specified in paragraph 2 of Section 1, * * * shall himself exercise the election hereby authorized; the right of election hereby authorized shall be exercised on behalf of any workman *under the age of eighteen by his parent or guardian*." (Italics ours.)

■ The above provisions of subdivision 4 of section 3 of the act clearly apply to *minors, not emancipated by marriage* under the age of 18 years, and who are still under the control of a parent or a guardian, since a minor under the age of 18 years, emancipated by marriage, is considered as having arrived at the age of majority for all acts which have any relation *to his trade.*

Article 379 of the Civil Code provides that: "The minor, whether male or female, is emancipated of right by marriage."

Article 381 of the Civil Code declares that: "The minor, emancipated by marriage, may demand an account from his tutor and a

settlement of the tutorship. The tutor is bound to pay him the balance ascertained to be due, and to deliver the property in his hands belonging to such minor."

Article 382 also declares that: "The minor, emancipated by marriage, does not need the assistance of a curator in any act or proceeding."

■ Consequently, the plaintiff in this case, a minor emancipated by marriage, did not need the assistance of a tutor to elect to be subject to the provisions of the Employers' Liability Act; nor is it pretended in this case that the plaintiff, at any time, gave the notice required by subdivision 3 of section 3 that the provisions of the act should not apply to himself.

■ It is expressly provided in article 376 of the Civil Code that: "The emancipated minor who is engaged *in trade*, is considered as having arrived at the age of majority, for all the acts which have any relation *to such trade.*"

The Civil Code itself has declared in article 14 that: "The words of a law are generally to be understood *in their most usual signification*, without attending so much to the niceties of grammar rules *as to the general and popular use of the words.*" Applying this familiar canon of construction to the word "trade" as used in article 376 of the Civil Code, we find that it is "generally equivalent to *occupation, employment*, or business, whether manual or mercantile; *any occupation, employment*, or business carried on for profit, gain or livelihood, not in the liberal arts or in the learned professions." Anderson's Dictionary of Law; Abbott's Law

Dictionary; Encyclopaedic Dictionary; Imperial Dictionary; Betz v. Maier, 12 Tex. Civ. App. 219, 33 S. W. 710 (citing Queen Ins. Co. v. State, 86 Tex. 250, 24 S. W. 397, 22 L. R. A. 483; 26 Am. & Eng. Enc. Law, 226; United States v. The Eliza, 11 U. S. (7 Cranch) 113, 3 L. Ed. 286; Chartered Mercantile Bank v. Wilson, 3 Exch. Div. 108; In re Pinkney, 47 Kan. 89, 27 P. 179; May v. Sloan, 101 U. S. 231, 25 L. Ed. 797.

It is also interesting to note that the Employers' Liability Act itself refers, in section 1, subd. 2, to the services rendered by every person coming under its provisions as "*employment* in the course of his employer's trade, business or occupation," and in subdivision 4 of section 3 to "any workman of the age of eighteen and upwards *engaged in the trades*, businesses *or occupations* specified in paragraph 2 of Section 1."

■■ Our conclusion is that plaintiff, a minor emancipated by marriage, was engaged "in trade" while employed by defendant company, and that, under article 376 of the Civil Code, he had the right to elect, and did elect, to come under the provisions of the Employers' Liability Act of this state.

■ Since plaintiff has elected to come under the provisions of the Employers' Liability Act, the rights and remedies granted to him therein are exclusive of all other rights and remedies that plaintiff may have. Act No. 20 of 1914, § 34, as amended by Act No. 38 of 1918.

Plaintiff, therefore, has no right or cause of action against defendant company in this suit for the recovery of damages under article 2315 of the Civil Code, the general tort law of the state.

The sole question, then, for decision is whether or not plaintiff has alleged a right or cause of action under the Employers' Liability Act.

The allegations in plaintiff's petition with reference to the right to recover under the Employers' Liability Act are found in articles 3 and 8. In article 3 plaintiff alleges "that his said upper leg is 4 inches shorter than it formerly was and that same is twisted and is out of shape and is weak and feels unsafe, and if petitioner, at this time, stands or walks on said leg for any length of time, it pains and hurts him."

In article 8 of the petition, plaintiff prays that he be "awarded compensation for the seriously permanently impaired condition of the upper half of his said right leg, in the sum of 65% of his weekly wages of $12.00 per week, during 100 weeks or the sum of $780.00 for the reason that this serious permanent and impaired condition of the upper half of the petitioner's right leg was not included in the settlement made for the loss of the right foot of petitioner."

Plaintiff bases his right or cause of action on subdivision 1 (e) of section 8 of Act No. 216 of 1924, which reads as follows: "In cases not falling within any of the provisions already made, where the employee is seriously permanently disfigured about the face or head, or where the usefulness of a member or any physical function is seriously permanently impaired, the court may allow such compensation as is reasonable in proportion to the compensation hereinabove specifically provided in cases of specific disability above named, not to exceed sixty-five per centum of wages during one hundred weeks."

██ We have repeatedly held that subdivision 1 (e) does not apply to a case falling within the provisions of subdivision 1 (a), (b), (c), or (d) of section 8 of the Employers' Liability Act. Black v. Louisiana Cent. Lumber Co., 161 La. 889, 109 So. 538, and cases there cited.

The case of Daniels v. Shreveport Producing & Refining Corporation, 151 La. 800, 92 So. 341, 342, cited in the Black Case, is quite similar to the case at bar, although the injury in that case was to an arm instead of a leg. Quoting from the Daniels Case: "The evidence shows, and it is not disputed, that the injury complained of has produced permanent though only partial disability. Plaintiff's right arm *was fractured* above the elbow; and, when reset—for it had to be set a second time—*a serious deformity resulted. The arm is permanently bent, is three inches shorter than the other arm, and is permanently weakened.* The injury is therefore within the class defined in subsection 1 (c) of section 8 of the statute, viz.: 'For injury producing partial disability,'" etc.

██ Subdivision 1 (c), § 8, of Act No. 216 of 1924 (as amended by Act No. 242, 1928), reads as follows: "For injury producing partial disability to do work of any reasonable character, sixty-five per centum of the difference between wages at the time of injury and wages which the injured employee is able to earn thereafter during the period of disability, not, however, beyond three hundred weeks."

Since plaintiff's injury, he had worked at Babin's Dairy, and received a dollar a day. At the time of the trial of the case, he had worked there about a month and a half, feeding cows and filling bottles, and testified that this was all he could do. T. 25.

Dr. Morgan, plaintiff's physician, testified that the femur in the upper part of the leg was fractured, and that the amputation of the lower part caused a shrinkage of the upper part and a shortage between the hip and knee of about three inches. He also states that there was some overriding or overlapping of the bone in the thigh, and a permanent bowing of the upper part of his leg, caused by the femur knitting together sidewise instead of endwise, and that this condition would cause weakness for a period of five years, and that the bowing of the leg might cause some deformity after a period of three or four years.

The injury received by plaintiff has, without doubt, caused partial disability to do work of any reasonable character. At the time of his injury plaintiff was receiving $12 per week as wages. Since his injury, plaintiff has been receiving $1 per day or $6 per week as wages; the difference in wages amounting to $6 per week. Plaintiff is, therefore, entitled to recover compensation per week in the sum of 65 per cent. of $6, or the sum of $3.90, during the period of disability, not, however, beyond three hundred weeks, under section 8, subd. 1 (c), of Act No. 216 of 1924, as amended by Act No. 242, of 1928.

██ It may be appropriate to observe, in conclusion, that it is true that defendant company admitted in its answer that plaintiff has no cause of action under Act No. 20 of 1914. Such admission, however, is a mere legal conclusion of the pleader, and, manifestly, could not deprive plaintiff of his alternative right or cause of action asserted

under the Employers' Liability Act. If defendant company by such admission in its answer could do so, then by the additional admission that plaintiff did not have a right or cause of action for damages under article 2315 of the Civil Code, plaintiff would have no cause or right of action at all, and would have his suit dismissed, without having had his day in court.

The total lack of a right or cause of action may be taken advantage of at any stage of the proceedings, either in the Supreme Court or in the Court of Appeal. Veasey v. Peters et al., 142 La. 1012, 77 So. 948; Brown v. Saul, 4 Mart. (N. S.) 434, 16 Am. Dec. 175; Union Bank v. Dunn, 17 La. 234; Montfort v. Schmidt, 36 La. Ann. 750; La Casse v. N. O., T. & M. R. R. Co., 135 La. 129, 64 So. 1012; Code of Practice, arts. 345, 346, 902.

Defendant company filed its exception of no right or cause of action in the Court of Appeal, First Circuit, as it had the right to do, and this exception was passed upon by that court.

It is therefore ordered that there be judgment in favor of plaintiff, Demosthenes Roy (alias Dem. Roy) and against defendant company, Mutual Rice Company of Louisiana, Inc., in the sum of $3.90 per week, as compensation under the Employers' Liability Act of this state, beginning October 3, 1930, with 5 per cent. per annum interest on all weekly installments of $3.90, from the date each installment has become due; and for all future compensation that may become due, at the rate of $3.90 per week, during the period of disability of plaintiff, not, however, beyond three hundred weeks.

O'NIELL, C. J., is of the opinion that the judgment of the Court of Appeal is correct.