## JACKSON v. SOUTHERN KRAFT CORPORATION.

No. 5696.

Court of Appeal of Louisiana. Second Circuit.

June 1, 1938.

Rehearing Denied June 30, 1938.

Writ of Certiorari and Review Denied Aug. 5, 1938.

Bernstein, Clark & Thompson, of Monroe, for appellant.

Madison, Madison & Files, of Bastrop, for appellee.

TALIAFERRO, Judge.

Plaintiff seeks to recover compensation from his employer, the defendant, as of permanent total disability. We shall summarize those allegations of the petition relied upon primarily to disclose a cause of action, and, secondarily, to disclose that said disability is a direct result of an accident, the indispensable prerequisite to the success of a suit of this character, viz; that he entered defendant's employment in the year 1933, and continued therein until May 6, 1936, at which time he was forced to resign his work because the macula of the retina of each eye had become so affected as to cause blindness to such extent that he was unable to see to work; that he immediately notified his employer of said injury and the resultant disability; that due to the failure to provide adequate protecting devices, and to the defective condition of the furnaces at which he worked, the gas flames therein "would escape without warning, would shoot out from openings" therein; that during the month of April, 1936, either due to defective machinery or to other causes, wholly within defendant's control, the flames came out of the furnace more often than previously and were unusually severe, and began to affect petitioner's eyes; that "on or about May 6, 1936, there was an unusually severe blast or escaping of the gas, which caused him to become practically blind," etc. Evidently gas flames and not gas itself was intended to be referred to in this quoted allegation. He further alleges "that as a result of said flames and sudden exposure to the infra-red rays of the gas flame in said furnace, he developed atrophy of the retinas of his eyes, concentrated at the macula, thereby making it impossible to longer adapt the retina to the varying degrees of light", resulting in, as by him alleged and contended, the loss of eyesight to the extent above mentioned.

Through a supplemental petition, plaintiff, in an alternative demand, sues to recover damages ex delicto, based upon allegations charging that his disability is due to and was caused by the negligence and carelessness of defendant in several respects. We omit details of these allegations for reasons which shall hereinafter obviously appear. They describe a breach of duty on the part of defendant.

Defendant excepted to the supplemental petition on the ground that it disclosed neither a cause nor a right of action, supporting same by the argument that the rights and remedies established by the Workmen's Compensation Law (Act No. 20 of 1914, as amended), in favor of an injured employee, or his dependents, in case of death, are exclusive of all others. The exception was sustained and the supplemental petition dismissed. Plaintiff here complains of this ruling.

Answering the original petition, defendant admits that it is engaged in a hazardous business and that plaintiff did work at and attend its furnaces in its Bastrop, Louisiana, mill, regularly since October 5, 1932, the date he first entered its employ. It denies notice of his alleged injury until April 2, 1937, and then only through a letter from his counsel. In all other respects, the essential allegations of the petition are specially denied.

Plaintiff's demands were rejected and he appealed.

Concerning the exception, plaintiff concedes that the Workmen's Compensation Law provides the exclusive remedy for an employee injured by accidental means, but further contends that if the employee sustains injury while performing the duties of his employment, in the course of the master's business, by means not accidental, but from the master's negligence, as sometimes happens in case of occupational disease, he may sue for damages under Article 2315 of the Civil Code.

Section 34 of the Workmen's Compensation Law, as amended, by Act No. 38 of 1918, § 1, reads:

"That the rights and remedies herein granted to an employee or his dependent on account of a personal injury for which he is entitled to compensation under this act shall be exclusive of all other rights and remedies of such employee, his personal representatives, dependents, relations, or otherwise, on account of such injury."

This provision has been strictly enforced by the courts in all cases wherein an injured employee, or his dependents, in case of his death, sought to circumvent its stringency by suing in tort. Roy v. Mutual Rice Co. of Louisiana, 177 La. 883, 149 So. 508; Williams v. Blodgett Const. Co., 146

La..841, 84 So. 115; Philps v. Guy Drilling Co., 143 La. 951, 79 So. 549; Daigle v. Moody et al., La.App., 140 So. 842, and other cases therein cited.

On the other hand, it is as equally well established that in a proper case an injured employee may sue for workmen's compensation and graft thereon by alternative allegations a demand for damages under Article 2315 of the Civil Code, and vice versa. Roy v. Mutual Rice Co., supra; Hale v. Gilliland Oil Co., 151 La. 500, 91 So. 853; Pierre v. Barringer, 149 La. 71, 88 So. 691; Ryland v. Harve M. Wheeler Lumber Co., 146 La. 787, 84 So. 55; Philps v. Guy Drilling Co., supra; Noble v. Southland Lumber Co., 4 La.App. 281.

The equity of the operative effect of this principle of procedure is clearly reflected in syllabus of the Noble Case, supra, which is as follows:

"A plaintiff who thinks himself an employee of the defendant and so testifies, under a statement of facts that clearly shows he is not, does not bar himself from the right to sue for damages under Article 2315 of the Civil Code."

Where there is doubt as to whether the relationship of employer and employee exists when the alleged employee is injured, he may, with propriety, under appropriate allegations, sue in the alternative. By so doing, he averts any possibility of prescription accruing against the claim embraced in the alternative demand, and also obviates the possible necessity of instituting another suit.

In the present case the relationship between plaintiff and defendant is admitted. It was that of employer and employee. Therefore, they were each bound by the provisions of the Workmen's Compensation Law, with special reference to the above quoted section of it. Whatever disability plaintiff has suffered as a result of injury received by him while discharging the duties of his employment must be compensated, if at all, strictly in keeping with the terms of that law. Under it, negligence chargeable to the employer is not of controlling influence in determining the merits of a claim for compensation; and if such a claim is in all other respects without merit, the fact that the injury or disability complained of is or was the result, directly or indirectly, of the negligence of or arose from a breach of duty on the part of the employer, does not enhance the complainant's chances of recovery. Liability vel non does not necessarily pivot upon any element of negligence or of a breach of duty. Compensation is frequently allowed in cases barren of any sort of negligence on the part of the employer, his agents or representatives, and at times disallowed when the disability, forming the basis of the claim, is a result of the employer's passive negligence. Anent this line of reasoning, Judge Webb, as the organ of this court in Nugent v. Lee Lumber Co., 4 La. App. 371, apropos of the question discussed, had this to say:

"There are, no doubt, instances where a person who is an employer would be liable to another who is his employee for damages sustained by the latter through the negligence of the former, his agents or servants, which liability could have no connection with the liability of the employer, as such, under Act No. 20 of 1914; but the negligence charged in the present alternative demand is clearly based upon an alleged breach of an obligation or duty which could have been due or owing to decedent only as an employee, otherwise the alternative demand discloses no cause of action, and we are therefore of the opinion the exception was properly sustained."

The burden rests upon a plaintiff, suing for workmen's compensation, to allege and prove that the injury sustained by him, producing the disability on account of which he sues, resulted from an accident, within the meaning of said law, happening while he was "performing services arising out of and incidental to his employment in the course of his employer's (hazardous) trade, business or occupation". If he cannot meet the requirements of this test, regardless of the nature of his disability or the cause or causes for its existence, he is without a cause of action against his employer. This law, Act No. 20 of 1914, § 38, as amended by Act No. 38 of 1918, § 1, defines the word "accident" as follows:

"That the word 'Accident,' as used in this act shall, unless a different meaning is clearly indicated by the context, be construed to mean an unexpected or unforseen event happening, suddenly or violently, with or without human fault and producing at the time objective symptoms of an injury."

We are of the opinion that the exception is well founded and, therefore, was properly sustained.

Plaintiff first entered defendant's employ in October, 1932. From that time until he left its employ on April 30, 1936, he fired furnaces of defendant's paper manufacturing plant in Bastrop, Louisiana. Each shift necessary to maintain adequate heat in the group of furnaces consisted of sixteen men. There were four shifts in a run of twenty-four hours. The normal fire in each furnace is compared by several witnesses to that produced by wood in the old-time fire-places. Occasionally, when the furnaces "got too hot" tongues of flame would shoot out not over three feet from apertures in or about the furnace door. If a workman should have his head within said distance of the door, the flames would singe his eyebrows and lashes and the unprotected hair on his head, but beyond this they are not considered, nor have they in the past proven to be dangerous. During the many years' said furnaces have been operated, plaintiff is the only workman who has complained of being injured or of having suffered disability by or through the heat, glare or flames in or from them.

Plaintiff's sense of sight is impaired 51.1%. His contention is that on the last day he worked at the furnace, unusually large, bright and powerful flames, at different times during the day, shot out of the door, singed his eyebrows and lashes, and precipitated the present impairment of sight. These particular flames are relied upon as constituting an accident within the meaning and intendment of the Workmen's Compensation Act.

We are convinced from an abundance of testimony on the subject that the flames which emanated from the furnace on said day were of the same nature and character as those which often emanated therefrom. Plaintiff worked that entire day. He made no outcry and gave no alarm as one would naturally do if injured as he says he was. He informed not one of his fellow workmen of such happening, many of whom worked very close to him. He did not report the alleged accident to any representative of defendant. The first knowledge defendant had of his present pretensions was through a letter from his counsel written nearly one year after date of the alleged accident. His testimony in support of his present position is flatly contradicted by that of several disinterested witnesses. His own passive action, in the respects above mentioned, goes far towards neutralizing his testimony. There was no evidence of burns on or about his face when he visited physicians very soon after he quit work.

We are convinced, however, that plaintiff was forced to quit work at the time he did because of the impairment of vision. His eyes are affected to the extent and in the manner as by him alleged. But the medical testimony preponderates overwhelmingly in favor of the contention that said impairment is ascribable almost, if not entirely, to chronic·syphilis. It is possible that constant attention to the furnaces and exposure to the heat, glare and intermittent flames therefrom, for so long a time, to an extent impossible of determination, aggravated the syphilitic condition and contributed slightly to the present status of the sense of sight.

Plaintiff's eyes bothered him for quite a time before he quit work. He consulted Dr. Garnier, defendant's regular physician, two months before he quit. It was then discovered for the first time that he was afflicted with syphilis. Appropriate treatment was administered to him until March 16th. His sight improved materially from this treatment. Dr. Garnier saw him no more until September 11th, over four months after the alleged accident. He found that plaintiff had developed "a brand new set of symptoms of disease". The case was referred to eye specialists. With one exception, these specialists are in accord as to the cause of plaintiff's trouble. They ascribe it to syphilis or other organic disease. They are certain that the heat, glare and flames from the furnace could not have brought about the condition his eyes are now admittedly in.

Should it be held that plaintiff's impaired vision was caused exclusively, or nearly so, from exposure to the regular daily heat, glare and flames of the furnaces he attended, over the long period he worked for defendant, the best that could be said for him would be that his disability is an incident to and a result of the nature and character of work by him performed. It would be classed as an "occupational disease", and it is well established that disability superinduced by this character of disease is not compensable. Cannella v. Gulf Refining Co., La.App., 154 So. 406; Faulkner v. Milner-Fuller, Inc., La.App., 154 So. 507; McLain v. N. O. Public Service, Inc., 12 La.App. 668, 126 So. 701; Freiss

v. Lone Star Cement Co., La.App., 161 So. 209.

For the reasons herein assigned, the judgment appealed from is affirmed with costs.