162 So. 806

## McGRUDER v. SERVICE DRAYAGE CO., Inc.

No. 33382.

July 1, 1935.

Rehearing Denied July 18, 1935.

Gordon Boswell and John A. Smith, Jr., both of New Orleans, for relator.

W. A. J. Tonglet, Habans & Coleman, and A. I. Kleinfeldt, all of New Orleans, for respondent.

ODOM, Justice.

The defendant is engaged in the drayage business in New Orleans, and uses motortrucks in connection therewith. It employed plaintiff as a truck driver at a daily wage of $4.30, and on March 16, 1932, while plaintiff was operating one of defendant's trucks loaded with cotton, the left front wheel struck a scantling which had been used as a skid on the platform, causing the scantling to fly up and strike plaintiff's left hand. It is alleged that the hand was crushed, but the testimony shows that only the first or index finger was injured. The hand was examined and the finger treated first by Dr. Jones, then by Dr. Bowers and later by Dr. Gardiner, at defendant's expense.

As a result of the injury, plaintiff was "laid up," as the doctors say, and unable to work for quite a long period. Finally, on February 8, 1933, more than ten months after the injury, plaintiff still being unable to work, he consulted Dr. E. A. Ficklen, who says that he found that plaintiff's finger "was stiff, and was held rigid and had atrophied." In consequence thereof, Dr. Ficklen says: "When he tried to grasp objects, that finger could not be bent and he struck objects which he tried

to grasp. Since he was a working man, and I did not think any type of operation would restore motion in the finger, I did an operation through the middle third of the proximal phalanx of that finger. That was done on March 16, 1933."
Dr. Ficklen testified, as did others, that during the time the treatments to restore the finger were being administered, plaintiff was "laid up" and unable to work, and that this disability continued until the finger was amputated and for some time thereafter, or until the hand had healed from the operation, after which plaintiff could work as a truck driver as well as he could before the injury. The entire period of disability was 51 weeks.

In the meantime defendant paid plaintiff compensation for 30 weeks at the rate of $9.80 per week, a total of $294. Plaintiff, not being satisfied, brought this suit under the Workmen's Compensation Law (Act No. 20 of 1914, as amended by Act No. 242 of 1928) on June 18, 1933, alleging:

"That petitioner has been continuously totally disabled since the accident and that the amputation of his index finger incapacitates him from ever again doing the work he has been performing; and that he is not trained in nor fitted for any other work. And that petitioner is entitled to have judgment for and recover of defendant workman's compensation of $18.72 a week until his disability ceases, with legal interest on each weekly payment from the date due until paid, less the aforesaid twenty (thirty) payments of $9.80."

Alleging that he was due Dr. Ficklen $57.50 for performing the operation, plaintiff prayed for judgment against defendant for that amount, and "compensation of $18.72 per week from the date of his injury until petitioner's disability is removed, less twenty (thirty) payments of $9.80."

The trial judge rendered the following judgment:

"It is ordered, adjudged and decreed that there be judgment in favor of plaintiff, Arthur Magruder, and against defendant, Service Drayage Co., Inc., as follows:

"Plaintiff is allowed total disability from the date of injury, March 16, 1932, through the date of amputation of his finger, March 10, 1933, at the rate of $16.77 per week. Plaintiff is further allowed compensation at the rate of $16.77 per week for a period of thirty weeks from the date of amputation; said allowance of thirty weeks to be in addition to the amount allowed for total disability. Defendant is given credit for $294.00 paid on account of said disability; said payment being compensation at the rate of $9.80 per week for thirty weeks. Plaintiff shall have judgment in the full sum of $57.50 medical expenses. The above amounts are to run with interest on the payments from the dates that they became due, together with all costs."

Defendant appealed, and the judgment was amended so as to reduce the compen-

sation allowed plaintiff from 81 weeks to 30 weeks, and, as thus amended, the judgment was affirmed.

Plaintiff applied to this court for writs, which were granted, and the case is now before us for review.

It is not quite clear from plaintiff's petition whether he intended to bring his suit under subsection 1 (a), § 8, of the Workmen's Compensation Law (as amended by Act No. 242 of 1928, p. 357), or subsection 1 (b) of section 8 of the act. Subsection 1 (a) reads as follows:

"For injury producing temporary total disability to do work of any reasonable character, sixty-five per centum of wages during the period of disability, not, however, beyond three hundred weeks."

Subsection 1 (b) reads as follows:

"For injury producing permanent total disability to do work of any reasonable character, sixty-five per centum of wages during the period of disability, not, however, beyond four hundred weeks."

In paragraph 13 of plaintiff's petition he alleged that he has been continuously totally disabled since the accident, and that the amputation of his index finger incapacitates him from ever again doing the work that he was performing when injured. That allegation would indicate that plaintiff intended to classify his case as one coming under subsection 1 (b), which provides for permanent total disability. But in paragraph 16 of the petition it is alleged that plaintiff is entitled to recover compensation "until his disability ceases," which indicates that he intended to classify his case as one coming under subsection 1 (a) of the act.

However, we think this is not material, because it is perfectly clear that plaintiff is claiming compensation under the general disability clauses of the act and not compensation for the loss of a member or the loss of the use of a member, as classified and provided for under subsection 1 (d), § 8 of the act. While plaintiff alleges that his first or index finger was amputated, he does not claim compensation for the loss of that finger. The district judge found, and his finding seems to be supported by the testimony, that plaintiff was totally disabled for a period of 51 weeks, and allowed him compensation accordingly. The judgment clearly shows that, and it shows further that, in addition to the compensation which he allowed for 51 weeks as for total disability, he further allowed plaintiff compensation for an additional period of 30 weeks under paragraph 2, subd. (d), subsection 1, § 8 of the act, which reads as follows:

"For the loss of a first finger, commonly called the index finger, sixty-five per centum of wages during thirty weeks."

The Court of Appeal (158 So. 252, 253) was of the opinion, and so held, that inasmuch as plaintiff had finally lost the first or index finger of the left hand as a result of the injury, he could recover no more than the amount allowed by the

statute for the loss of that finger, which was the contention made by counsel for the defendant. It said in the course of its opinion:

"The judgment [referring to the judgment of the trial court] can only be sustained upon the theory that the provisions relied upon by defendant limiting recovery do not apply to those injuries which produce disability to perform work of any reasonable character, a view once entertained by this court. See Wilson v. Union Indemnity Co. (La. App.) 150 So. 309, 310."

Continuing, the opinion says:

"Our opinion in the Wilson Case was not shared by our brothers of the Second circuit, who expressed a contrary view in the case of Calhoon v. Meridian Lumber Co. (La. App.) 151 So. 778. Upon application to the Supreme Court a review of the Calhoon Case was granted and the opinion of the Court of Appeal for the Second circuit affirmed. 180 La. 343, 156 So. 412. In view of the holding in the Calhoon Case, the conclusion is inescapable that the judgment of our brother below was erroneous to the extent that compensation was allowed beyond 30 weeks. The weekly compensation claimed by plaintiff ($16.77) is conceded to be correct. The amount asked for medical expenses, $57.50, is also conceded."

The Court of Appeal erred in its ruling. The Calhoon Case does not support those holdings. We ordered that case up

and affirmed the judgment of the Court of Appeal, Second Circuit (180 La. 343, 156 So. 412). The issues involved in that case, as understood by this court, were stated in 180 La. 343, at page 346 of the opinion, 156 So. 412, 413, as follows:

"It is not denied that the plaintiff is entitled to compensation, but, inasmuch as plaintiff does not ask for compensation under the general disability subsections of Act No. 20 of 1914, as amended by Act No. 242 of 1928, the question which was presented to the Court of Appeal, and which we are now called upon to decide, is whether plaintiff is entitled to compensation under section 8 (1) (d) (3), of the act, which provides for weekly payments for 20 weeks for the loss of a finger, other than the index finger; or, under section 8 (1) (d) (2) and (3), which provides for weekly payments for 90 weeks, for the loss of four fingers; or, under section 8 (1) (d) (5), which provides for weekly payments for 150 weeks for the loss of a hand."

The Court of Appeal (151 So. 778, 780) stated the issues involved as follows:

"The right to some compensation not being contested, the question is whether it should be allowed under the section granting a fixed amount, i. e., section 8, subd. 1 (d) (3), of the act (Act No. 242 of 1928, p. 357), which allows 20 weeks for the loss of any other than the index finger; section 8, subd. 1 (d) (2 and 3), allowing a total of 90 weeks for the

loss of four fingers; section 8, subd. 1 (d) (5), allowing 150 weeks for the loss of a hand; or for general disability as covered by paragraphs (a), (b), and (c) of subdivision 1 of said section 8. *Plaintiff does not pray for compensation under these general disability paragraphs, but may be granted the compensation therein allowed if justified by the evidence.* Roy v. Mutual Rice Co. of La., 177 La. 883, 149 So. 508." (Italics ours.)

In the Calhoon Case, the Court of Appeal found as a fact, and after reading the testimony we approved its finding, that plaintiff had, due to the injury, lost the use of a hand, which under paragraph 14, subsec. 1 (d), § 8 of the act, "is equivalent to the amputation of the member." As the plaintiff had lost the use of his hand, the Court of Appeal held that he was entitled to compensation for 150 weeks under paragraph 5, subsec. 1 (d), § 8 of the act, which provides that an injured employee is entitled "for the loss of a hand, sixty-five per centum of wages during one hundred fifty weeks."

We approved that holding.

The Court of Appeal followed the ruling of this court in the case of James v. Spence & Goldstein, 161 La. 1108, 109 So. 917, where the facts were almost identical. In the Spence & Goldstein Case, the employee had lost the use of his right hand, which incapacitated him to do the only kinds of work he knew anything about, carpentering and farming, and partially incapacitated him to do work of any kind. But according to his own contention he was only partially disabled, and claimed compensation for permanent partial disability under clause (c), subsec. 1, § 8, of Act No. 216 of 1924, or 65 per cent. of the difference between wages which he was earning at the time of the accident and wages which he was thereafter able to earn. This court held that although plaintiff's case fell within subsection 1 (c) of that statute, providing for compensation for partial disability, yet in view of subsection (d) of the act, which fixes the compensation to be paid for the loss of certain members of the body, and limits the duration thereof, the total amount of compensation allowed for the partial loss of the use of a hand could not exceed the amount allowed by the statute for the total and permanent loss of the use of that member.

But that case and others like it which followed are not controlling in the instant case. Plaintiff was granted compensation for total disability as a result of the injury to his finger. He alleged that he had not been able to do any work at all since the injury and proved that he was totally disabled for 51 weeks. This disability was due to the accident. He was treated by physicians over a period of several months with the view of saving the finger and the hand to full usefulness. The treatments failed, and it finally became necessary to amputate the finger in order to restore the usefulness of the hand. After

the amputation of the finger and after the hand healed from the operation, plaintiff was able to do the same kind of work as he was doing before the injury. But the amputation of the finger was a mere incident, a part of the treatments; an operation which was necessary in order to relieve the total disability to labor which he had suffered continuously since the accident and injury. He was laid up and under treatment for 51 weeks, and while under treatment could not work. He brought this suit under the disability provisions of the statute, and it falls squarely under them, and the fact that a finger was amputated as a part of the treatment administered to relieve his disability to labor is no reason for holding that inasmuch as he incidentally lost a finger as a result of the accident he can recover compensation only for the loss of the finger, which is 65 per cent. of wages for 30 weeks, 21 weeks less than the time he actually lost on account of the accident and injury.

If in order to relieve plaintiff's disability it had been necessary to remove only two phalanges of the index finger, under paragraph 11, subsec. 1 (d), § 8 of the act, he would have been entitled to compensation for only 15 weeks, or 36 weeks less than the time he was actually totally disabled, if a case like this falls under subsection 1 (d), § 8, of the act. To so hold would be to lose sight entirely of the general disability clauses of the act,

under which defendant sued, and under which his suit clearly falls.

If plaintiff had based his claim for compensation upon the proposition that the loss of the finger or the loss of the use of it, which amounts to the same thing, had decreased his earning capacity, and for that reason he was entitled to receive as compensation the difference between what he was earning at the time of the accident and what he was able to earn afterwards, the Spence & Goldstein Case might have application.

The suit in that case was not brought under either subsection 1 (a) of section 8 of the act, providing for injury producing "temporary total disability to do work," or under subsection 1 (b), for injury "producing permanent total disability to do work," but under subsection 1 (c), § 8, "for injury producing partial disability to do work." While we have not before us plaintiff's petition in the Calhoon Case, we understand that the same was true there, because the Court of Appeal said in the course of its opinion that plaintiff did not pray for compensation under the general disability paragraphs of the act.

The difference between those cases and the one at bar is that they were not brought under the general disability provisions of the statute, whereas in this case plaintiff's suit was brought under those provisions of the statute and he stressed the proposition all through that the accident had totally disabled him, and he asked for compensation for total disability. He

alleged that he was permanently totally disabled, but he failed to prove that; the testimony showing that he was totally disabled for a period of only 51 weeks.

Under the pleadings and facts disclosed, plaintiff is entitled to compensation at $16.77 per week for total disability during 51 weeks dating from March 16, 1932, the date on which he was injured, plus interest on those payments as they fell due, and also plus $57.50 for medical expenses, subject to a credit of $294 paid by the defendant. To that extent the judgment of the district court is correct. But he is not entitled to judgment for 30 weeks in addition thereto for the loss of the finger. Norwood v. Lake Bisteneau Oil Co., 145 La. 823, 83 So. 25.

For the reasons assigned, the judgment of the Court of Appeal is set aside, and the judgment of the district court is amended by eliminating therefrom the provisions for compensation for 30 weeks for the loss of the finger in addition to the 51 weeks for total disability, and, as thus amended, it is reinstated and affirmed; defendant to pay all costs.

O'NIELL, C. J., dissents and hands down reasons.

ROGERS, J., dissents, being of the opinion that the judgment of the Court of Appeal is correct.

O'NIELL, Chief Justice (dissenting).

The only complaint, or assignment of error, made by the plaintiff in his petition to this court for a writ of review, was that the record showed that the injury which he had suffered was an injury to his hand, and was not confined only to the finger. Hence he contended, in his petition to this court, that the judgment of the district court, allowing him compensation for 51 weeks, was not excessive, because it was less than the amount which the statute allowed for the loss of a hand, and which was allowed in Calhoon v. Meridian Lumber Co., 180 La. 343, 156 So. 412, for an injury causing the loss of the use of a hand.

The plaintiff did not, either in his petition for a rehearing in the Court of Appeal, or in his petition to this court for a writ of review, assign any other error, or make any other complaint, than that the Court of Appeal had erred in holding that the injury which he had suffered was confined to his finger, and did not extend to the whole hand.

In the opinion which has been prepared and submitted for our consideration, it is said: "It is alleged that the hand was crushed, but the testimony shows that only the first or index finger was injured."

On that statement of fact, if we allow the plaintiff compensation for more than 30 weeks for the loss of his index finger, we are allowing him not only more than the statute allows, but more than he is claiming for the loss of his index finger. He has never claimed compensation for more than 30 weeks on the statement or

admission "that only the first or index finger was injured."

The attorneys for the plaintiff concede, as I understand, that he is entitled to compensation for only 30 weeks if we find "that only the first or index finger was injured."

It may be thought that the Legislature should allow compensation for more than 30 weeks for the loss of an index finger; but that is a matter for the Legislature to deal with, not the courts.

Section 8, subsec. 1 (d) (2), Act No. 20 of 1914, as amended by Act No. 242 of 1928, p. 357, declares that, for the loss of a first finger, commonly called the index finger, the compensation shall be 65 per cent. of the wages during 30 weeks. And, in a subsequent paragraph (18) subsec. 1 (d), in the same section of the statute, p. 358, it is said that, if compensation has been paid for a temporary total disability, or permanent total disability, or partial disability, under subsection 1 (a), 1 (b), or 1 (c), the amount so paid shall be deducted from the compensation allowed for the loss of a member, such as a thumb, finger, hand, etc., under subsection 1 (d). In another paragraph (14), subsec. 1 (d), of the same section, on the same page, it is said: "A permanent total loss of the use of a member [meaning a thumb, finger, toe, hand, arm, foot, or leg] is equivalent to the amputation of the member."

It would be impossible for the Legislature to say more plainly than the Legislature has said that for the loss of an index finger the compensation shall be paid for 30 weeks, no more and no less, no matter how long the loss of the index finger causes the injured employee to be "laid up." If the injured employee, in this case, had been "laid up" by reason of some additional injury, beyond the injury to the index finger, the case would be different; in fact, it would be such a case as the plaintiff contends it is. But, since the court has found "that only the first or index finger was injured," that ought to be the end of the case, according to the contention of the plaintiff himself.

If the opinion which has been submitted for our consideration is to become the law, hereafter, an employee who suffers the loss of a thumb, finger, toe, or other member, will have the option either to claim the compensation for the fixed period for the loss of such member, or to claim compensation for the period of disability, not to exceed 300 weeks, or 400 weeks, as the case may be. That would be squarely in conflict with paragraph 18 of subsection 1 (d) of section 8, p. 358, Act No. 242 of 1928, viz.:

"18. Where compensation has been paid under subdivision (a), (b) or (c) of this schedule, the amount of such payment shall be deducted from any compensation allowed under subdivision (d) or sub-section 2 of the Section."

Subsection 1 (a) provides for injury producing temporary total disability; sub-

section 1 (b) provides for injury producing permanent total disability; subsection 1 (c) provides for injury producing partial disability, either temporary or permanent; and subsection 2 provides for injury causing death within one year after the accident. Paragraph 18, subsec. 1 (d), which I have quoted, declares that, if payments have been made to an injured employee under subdivision (a), or (b), or (c), for disability resulting from an injury to a thumb, finger, toe, hand, arm, foot, or leg, and if the injury results in the amputation or total loss of the use of the thumb, finger, toe, hand, arm, foot, or leg, and is to be compensated according to subdivision (d); the amount already paid under subdivision (a), (b), or (c) shall be deducted from the amount to be paid under subdivision (d). And paragraph 18, subsec. 1 (d), also provides that, if payments have been made to an injured employee under subdivision (a), (b), or (c), for an injury which results in death within one year, the amount of the payments already made shall be deducted from the payments to be made to the dependent or dependents of the deceased employee.

I favor adhering to the letter of the law, which is very plain in this case, notwithstanding it may seem to give inadequate compensation in this or any other particular instance. Therefore, I respectfully decline to subscribe to the opinion which has been submitted for our consideration.