165 So. 185

**BARR v. DAVIS BROS. LUMBER CO.,
Limited.**

No. 33612.

Dec. 2, 1935.

Rehearing Denied Jan. 6, 1936.

J. Norman Coon, of Monroe, for applicant in writ.

Theus, Grisham, Davis & Leigh, of Monroe, for respondent in writ.

FOURNET, Justice.

Plaintiff instituted proceedings against the defendant for compensation under the provisions of the compensation laws of this state for total permanent disability incurred as a result of an injury to his left leg while in the employ of defendant, sub-

ject to a credit for the compensation paid to him during 125 weeks, plus an additional sum of $250 for medical and hospital fees.

The defense is that plaintiff's injury is confined to a point between the knee and the ankle and does not amount to more than the loss of the use of a foot, compensable under the provisions of section 8, subsection 1, paragraph (d), subparagraph 7, of Act No. 20 of 1914, as amended by Act No. 242 of 1928 (page 357), and having paid the plaintiff compensation for 125 weeks, plus medical and hospital fees aggregating more than $250, he has received all that he is entitled to under the law.

The trial judge rendered judgment in favor of the plaintiff as prayed for, except the fees for medical attention and hospitalization which were rejected. The Court of Appeal, Second Circuit (161 So. 664, 667), annulled the judgment and dismissed plaintiff's suit.

The case is now before this court for review on writs granted by us.

The trial judge, after carefully reviewing all the facts in the case, commented on plaintiff's condition in the following language:

"Plaintiff was caused to exhibit his knee to the Court. In its bowed, enlarged and distorted condition, I do not see how plaintiff could do any sort of manual, especially any labor that would require him to stand on his feet. I have no doubt that the pain and fatigue that he would suffer in sawing logs, or plowing, or picking cotton, or in doing many other kinds of manual labor that he might be called upon to do in this day when jobs are scarce and a laborer has to do such work as he can get, his pain and misery would be unbearable. Plaintiff says that he has pains in his hips and back, knee, leg and ankle when he walks or stands on his leg for any length of time. This is my conclusion after seeing the injured limb, and the testimony of the doctors, as well as that of plaintiff and his brother, confirm this conclusion."

The judge also found that "the effect of plaintiff's condition, which is the direct result of the injury to his leg, is to totally and permanently disable him from doing manual labor of any reasonable nature."

With reference to the plaintiff's condition, the Court of Appeal said:

"Although it is true that plaintiff's leg, below the knee, is now bowed and deformed, due to the malunion of the bones, and *prevents him from using it to walk without the aid of crutches, or to perform labor,* it is only equivalent, under the provisions of the Compensation Law of this state, to an amputation of that member below the knee, for which he is entitled to compensation for 125 weeks, at the rate of 65 per cent. of his weekly wage. He admits he has received compensation in that amount prior to filing this suit." (Italics ours.)

The issue in this case as we see it, therefore, is one as to the correct interpretation of the law, and presents for our consideration the sole question of whether plaintiff's claim is compensable under the pro-

visions of section 8, subsection 1, paragraph (d), subparagraph 7, of Act No. 242 of 1928, which amends Act No. 20 of 1914 (for the loss of the use of a foot), as contended for by the defendant and held to be correct by the Court of Appeal, or whether it is compensable under section 8, subsection 1, paragraph (b), of the act (for total permanent disability to do work of any reasonable character), as contended for by the plaintiff and held by the lower court.

Under subsection 1 of section 8 of Act No. 20 of 1914, as amended by Act No. 242 of 1928 (page 357), it is provided as follows:

"Section 8. 1. . That compensation shall be paid under this act in accordance with the following schedule of payments:

"(a) *For injury producing temporary total disability to do work of any reasonable character,* sixty-five per centum of wages during the period of disability, not, however, beyond three hundred weeks.

"(b) *For injury producing permanent total disability to do work of any reasonable character,* sixty-five per centum of wages during the period of disability, not, however, beyond four hundred weeks.

"(c) *For injury producing partial disability to do work of any reasonable character,* sixty-five per centum of the difference between wages at the time of injury and wages which the injured employee is able to earn thereafter during the period of disability, not, however, beyond three hundred weeks." (Italics ours.)

But under paragraph (d) it is provided that:

"In the following cases the compensation shall be as follows: * * *

"7. For the loss of a foot, sixty-five per centum of wages during one hundred and twenty-five weeks. * * *

"14. A permanent total loss of the use of a member is equivalent to the amputation of the member."

Subsection 8 of section 8 of the act (Act No. 242 of 1928, p. 362) provides:

"For injury producing temporary total or temporary partial disability the *Court, may in its discretion, award compensation for a fixed number of weeks to be based upon the probable duration of such disability.*" (Italics ours.)

It seems clear to us that the intention of the Legislature was to provide for compensation to be paid to an employee injured in the performance of work *for disability to do work of any reasonable character,* whether temporary total, permanent total, or partial, *during the period of disability,* under the provisions of paragraphs (a), (b), and (c), while under the provisions of paragraph (d) the *compensation shall be paid irrespective of the duration of the disability.*

Counsel for defendant place a strict construction on the provisions of paragraph (d) and argued in their brief that it was the intention of the Legislature to limit the right of an injured employee to recover, irrespective of the extent of his disability or the duration thereof, because of the

provisions in subparagraph 15 thereof (Act No. 242 of 1928, p. 358), "that in no case shall compensation for an injury to a member exceed the compensation payable under this act for the loss of such member."

The contention of counsel for defendant, which was maintained by the Court of Appeal, is based on the decision in the case of Calhoon v. Meridian Lumber Co., 180 La. 343, 156 So. 412.

The case of McGruder v. Service Drayage Co., Inc., 183 La. 75, 162 So. 806, 808, recently decided by us, disposes of this issue. We had for consideration in that case an injured employee who was treated by a physician for several months in an effort to save the first or index finger and restore the hand to its full usefulness, but treatment failed and it became necessary to amputate the finger. In reviewing the judgment of the Court of Appeal (158 So. 252, 253), we held that the employee was entitled to compensation under the total disability provisions of the statute and gave judgment for a period of 51 weeks, total disability, instead of 30 weeks for the loss of the index finger under section 8, subsection 1, paragraph (d), subparagraph 2, Act No. 242 of 1928. And in the opinion, we stated:

"The Court of Appeal (158 So. 252, 253) was of the opinion, and so held, that inasmuch as plaintiff had finally lost the first or index finger of the left hand as a result of the injury, he could recover no more than the amount allowed by the statute for the loss of that finger, which was

the contention made by counsel for the defendant. It said in the course of its opinion:

"'The judgment (referring to the judgment of the trial court) can only be sustained upon the theory that the provisions relied upon by defendant limiting recovery do not apply to those injuries which produce disability to perform work of any reasonable character, a view once entertained by this court. See Wilson v. Union Indemnity Co. (La.App.) 150 So. 309, 310.'

"Continuing, the opinion says:

"'Our opinion in the Wilson Case was not shared by our brothers of the Second circuit, who expressed a contrary view in the case of Calhoon v. Meridian Lumber Co. (La.App.) 151 So. 778. Upon application to the Supreme Court a review of the Calhoon Case was granted and the opinion of the Court of Appeal for the Second circuit affirmed. 180 La. 343, 156 So. 412. In view of the holding in the Calhoon Case, the conclusion is inescapable that the judgment of our brother below was erroneous to the extent that compensation was allowed beyond 30 weeks. The weekly compensation claimed by plaintiff ($16.77) is conceded to be correct. The amount asked for medical expenses, $57.50, is also conceded.'

"The Court of Appeal erred in its ruling. *The Calhoon Case does not support those holdings.* We ordered that case up and affirmed the judgment of the Court of Appeal, Second Circuit (180 La. 343, 156 So. 412). *The issues involved in that case,*

*as understood by this court,* were stated in 180 La. 343, at page 346 of the opinion, 156 So. 412, 413, as follows:

" 'It is not denied that the plaintiff is entitled to compensation, but, inasmuch as *plaintiff does not ask for compensation under the general disability subsections* of Act No. 20 of 1914, as amended by Act No. 242 of 1928, *the question which was presented to the Court of Appeal, and which we are now called upon to decide,* is whether plaintiff is entitled to compensation under section 8 (1) (d) (3), of the act, which provides for weekly payments for 20 weeks for the loss of a finger, other than the index finger; or, under section 8 (1) (d) (2) and (3), which provides for weekly payments for 90 weeks, for the loss of four fingers; or, under section 8 (1) (d) (5), which provides for weekly payments for 150 weeks for the loss of a hand.'

"The Court of Appeal (151 So. 778, 780) stated the issues involved as follows:

" 'The right to some compensation not being contested, the question is whether it should be allowed under the section granting a fixed amount, i. e., section 8, subd. 1 (d) (3), of the act (Act No. 242 of 1928, p. 357), which allows 20 weeks for the loss of any other than the index finger; section 8, subd. 1 (d) (2 and 3), allowing a total of 90 weeks for the loss of four fingers; section 8, subd. 1 (d) (5), allowing 150 weeks for the loss of a hand; or for general disability as covered by paragraphs (a), (b), and (c) of subdivision 1 of said section 8. *Plaintiff does not pray for compensation under*

these general disability paragraphs, but may be granted the compensation therein allowed if justified by the evidence. Roy v. Mutual Rice Co. of Louisiana, 177 La. 883, 149 So. 508.'* (Italics ours.)

*"In the Calhoon Case, the Court of Appeal found as a fact, and after reading the testimony we approved its finding, that plaintiff had, due to the injury, lost the use of a hand,* which under paragraph 14, subsec. 1 (d), § 8 of the act, 'is equivalent to the amputation of the member.' As the plaintiff had lost the use of his hand, the Court of Appeal held that he was entitled to compensation for 150 weeks under paragraph 5, subsec. 1 (d), § 8 of the act, which provides that an injured employee is entitled 'for the loss of a hand, sixty-five per centum of wages during one hundred fifty weeks.'

"We approved that holding." (Italics ours.)

We found as a fact in the McGruder Case that the defendant "was laid up and under treatment for 51 weeks, and while under treatment could not work," and we said further, 183 La. 75, 162 So. 806, at page 809:

*"He brought this suit under the disability provisions of the statute, and it falls squarely under them,* and the fact that a finger was amputated as a part of the treatment administered to relieve his disability to labor is no reason for holding that inasmuch as he incidentally lost a finger as a result of the accident he can recover compensation only for the loss of the finger, which is 65 per cent. of wages

for 30 weeks, 21 weeks less than the time he actually lost on account of the accident and injury." (Italics ours.)

In discussing the McGruder Case, we differentiated it from the cases of Calhoon v. Meridian Lumber Co. (La.App.) 151 So. 778, 779, Id., 180 La. 343, 156 So. 412, and James v. Spence & Goldstein, 161 La. 1108, 109 So. 917, saying:

"*The difference between those cases and the one at bar is that they were not brought under the general disability provisions of the statute, whereas in this case plaintiff's suit was brought under those provisions of the statute* and he stressed the proposition all through that the accident had totally disabled him, and he asked for compensation for total disability. He alleged that he was permanently totally disabled, but he failed to prove that; the testimony showing that he was totally disabled for a period of only 51 weeks." (Italics ours.)

■ The main object of the legislators in enacting the Employer's Liability Act was to provide an employee, whose wages were discontinued as a result of an injury sustained while serving his master, with funds to subsist on until he could return to work. But while they had in mind as their main object the disability of the injured employee and the necessity of funds to sustain himself *during such disability,* they also had another object in view, that there might arise specific injuries such as severance or amputation of members or disfigurement, etc., without disability, and having by the statute deprived the employee of the right to recover in tort, the legislators deemed it just and wise that an employee should have the right to compensation in such cases; hence the provisions of the act under paragraph (d), where disability is not mentioned.

■ A careful review of Act No. 20 of 1914, as amended, and the jurisprudence on section 8 thereof convinces us that it was not the intention of the Legislature to have paragraph (d) supersede and take precedence over the disability sections, but rather to supplement them. This conclusion is in harmony with the case of Knispel v. Gulf States Utilities Co., 174 La. 401, 141 So. 9, and the jurisprudence of this court on the subject and in keeping with a fair and reasonable interpretation of the statute.

■ The trial judge found that the plaintiff's injury totally and permanently disabled him from doing work of any reasonable character, and after carefully reading the record, we are convinced that his finding is correct.

For the reasons assigned, the judgment of the Court of Appeal, Second Circuit, is reversed and the judgment of the district court reinstated and affirmed; defendant to pay all costs.

O'NIELL, C. J., adheres to the dissenting opinion which he wrote in the McGruder Case (McGruder v. Service Drayage Co., Inc.), 183 La. 75, 162 So. 806.

ROGERS, J., dissents, being of the opinion that the judgment of the Court of Appeal is correct.

HIGGINS, Justice (concurring).

I fully concur in the view expressed in the majority opinion, which is further fortified by the reasons stated in the cases of Wilson v. Union Indemnity Co. et al., (La.App.) 150 So. 309, and Bell v. Employers' Liability Assur. Corporation, Ltd. (La.App.) 152 So. 766.