## LOMAS v. J. A. BENTLEY LUMBER CO. et al.

### No. 5707.

Court of Appeal of Louisiana. Second Circuit.

June 1, 1938.

Kay & Kay, of De Ridder, for plaintiff.

Gist & Thornton, of Alexandria, for defendants.

HAMITER, Judge.

A heavy piece of steel rail which was being handled or moved by plaintiff and eight other laborers during the course of their employment with the J. A. Bentley Lumber Company, on August 7, 1936, fell on the left foot of the former. Serious injuries were occasioned by the blow.

In this suit in which the provisions of the Louisiana Employers' Liability Act, Act No. 20 of 1914, are invoked, plaintiff alleges that he has been rendered totally and permanently disabled to perform work of any reasonable character, and that at the time of the accident he was earning an average weekly wage of $12.75. His prayer is for an award of compensation against said J. A. Bentley Lumber Company, a commercial co-partnership, and J. A. Bentley, one of the members thereof, in solido, at the rate of 65% of his weekly wage, or $8.29 per week, beginning August 7, 1936, during the period of disability but not exceeding 400 weeks, less the sum of $195 previously paid.

Defendants answered, admitting that plaintiff received an injury to his foot, but averring that he has since recovered and has been paid all compensation due and owing to him. In amplification of this they allege that he was discharged by his physician on January 29, 1937, as able to return to work, and was paid full compensation to that date, being 25 weekly payments of $7.80 each, or a total of $195. They further aver that his weekly wage was $12, and that they have furnished to him all necessary surgical and medical attention. The rejection of plaintiff's demands is asked.

At the commencement of the trial of the case on its merits defendants urged that plaintiff's average weekly wage was $12.12 instead of $12 as alleged in their answer, and tendered to him 65% of that difference for the period for which compensation had been paid. The tender was refused. The trial resulted in a solidary judgment against said defendants for 52 weeks' compensation at the rate of $7.92 per week, together with legal interest thereon, subject to a credit of $195 previously paid. All parties litigant appealed devolutively from the judgment.

The issues of the controversy as disclosed by the briefs of counsel relate to (1) the extent of the injury and resulting disability, and (2) the rate of wages earned by plaintiff at the time of the accident.

The falling of the piece of rail resulted in the fracturing of the first, second, third and fourth metatarsals of claimant's left foot. These four bones, together with another, form the longitudinal arch of the foot and support a large portion of the body's weight when the person is walking or standing.

It is undisputed that at the time of the trial, which was on June 17, 1937, or approximately ten and one-third months after the accident, the fractured bones had completely healed with strong union. The first and second metatarsals were then properly aligned, but there was a slight or moderate angulation of the third and fourth ones toward the lateral aspect. The injured foot was attended with some swelling, and this was responsible for its being larger in circumference than the right to the extent of about one-half or three-fourths of an inch. Claimant complained of pain and suffering in and tenderness of the member.

It is contended by plaintiff that the asserted pain and suffering in his foot at the time of trial, and consequently his claimed disability, is attributed to the malalignment of the third and fourth

metatarsals. This theory is supported by the positive testimony of one of his medical expert witnesses, but another does not strongly favor it. Defendants seriously urge that he had completely recovered long prior to the holding of the trial, and particularly on or about January 29, 1937, when compensation payments were discontinued; however, they contend that if there was disability in June of 1937, it was caused solely by plaintiff's failure to use and exercise his foot as he was advised to do.

 The record convinces us that when the case was tried plaintiff was experiencing sufficient pain in his injured foot to prevent his performing the work required of a manual laborer such as he was; and that at that time he was totally disabled within the purview and meaning of the compensation statute. Barr v. Davis Bros. Lumber Co., 183 La. 1013, 165 So. 185. However, we are satisfied that the angulation or malalignment of the third and fourth metatarsals was not responsible for the disability, as testified by the aforementioned expert. Another witness, who was a specialist in X-ray and pathology, photographed both of plaintiff's feet in February, 1937. The picture of the left foot revealed evidence of the fractures with good union and some angulation of the third and fourth metatarsal bones. In comparing it with that of the other or uninjured foot, he found that the same bones of the latter possessed a similar angulation. Thus the malalignment of the bones in question was not an abnormal condition.

The vast preponderance of the medical testimony is to the effect that in injuries involving fractures of the metatarsals constant exercise of the foot, after proper union and alignment of the bones, is a prerequisite to a relief from pain and swelling and the restoration of normal functions. Pertinent is the following testimony of a medical expert offered by plaintiff:

"Q. Ordinarily, a man with the broken foot he has had, the healed condition of those bones, would you expect to have a man that is totally disabled in that foot?

"A. I don't consider him permanently and totally disabled; at the present time with the pain he complains of I think he is disabled; depends upon the amount of pain he has, I couldn't tell how much he has, he complains of it.

"Q. If he doesn't use the foot will he ever get back to normal?

"A. It will be a long time.

"Q. And the more he uses it the more likely he will have a recovery, is that correct?

"A. I think so."

It is further to be found from the record that if suitable and proper exercise is given, the pain and swelling will cease within several weeks.

With reference to the time generally required for a complete recovery from an injury such as is here involved, including the healing process and the necessary use of the member, various estimates were given. These ranged from four months to one year. The trial court in determining the duration of plaintiff's disability used the maximum estimate.

As before observed, approximately ten and one-third months elapsed between the occurrence of the accident and the trial of the case, and at the latter time, according to our findings, the bones had healed with normal alignment. Thus more than six weeks were provided plaintiff, under the trial court's decree, to free himself of pain through the required exercising of the foot, and according to the testimony such period was sufficient for the accomplishment of that purpose.

It is urged by plaintiff that the judgment herein should provide for compensation during the existence of disability but not exceeding 400 weeks, and in support thereof numerous authorities are cited, particularly Price v. Gilliland Oil Co., 3 La.App. 175, in which this court said:

"Where a condition of total disability at the time of the trial is shown which is likely to continue for a considerable length of time, we think the purposes of justice demand that the matter be left for time to determine. In case the total disability does cease, defendant can avail itself of the right granted by the statute to review the judgment."

We think that the cited cases are not controlling here because of different factual situations. In each of those cases the probable duration of disability, which obviously was for a long period, could not be determined with reasonable certainty, while in the instant controversy it is satisfactorily shown that the disability would terminate within a period of several

weeks through proper cooperation furnished by and required of the claimant.

The other issue in the case involves a difference in compensation payments of only a few cents per week and is of slight importance. Our review of the relevant evidence does not disclose manifest error on the part of the trial judge in his computation, and it will not be disturbed.

It is our opinion that the judgment appealed from does justice between the parties and it should be and is affirmed.