In this case exceptions of no cause and no right of action and a plea of prescription of one year were sustained. Pleas of prescription of two years and res judicata were overruled. Plaintiff appealed from judgment dismissing his suit.
The objectives of this suit are: (1) To annul a compromise agreement, approved by the court on the joint petition of plaintiff and defendant, one of his employers, whereby a claim for compensation was settled by payment of a lump sum without discount, and (2) to recover additional compensation on the alleged ground that plaintiff's injuries are and have continuously been total and will be permanent. Error of fact is the basis of the action to annul. The good faith of defendant is not expressly questioned.
From the allegations of the joint petition we glean the following facts, to-wit:
On August 18, 1939, plaintiff was working for the defendant and the Red Iron Drilling Company on a well being drilled for oil a short distance north of the City of Shreveport, Louisiana, and on that date while carrying some tools from the well site into a tool house, dropped an axe onto his left foot which severed the great toe and the next two smaller toes, and also a portion of the toe next to the little one; that some injury was caused the foot proper at the locus of severance and it was found necessary to amputate about one-fourth of an inch of the joint back of the great toe, which it is alleged, "partially impaired the use of said foot." The joint petition contains the following allegations, to-wit:
"VI. Your petitioner, Harry Hanbury, is willing to pay one-half the full compensation to Louis Langston for the loss of four toes without any discount, and an additional Fifty and No/100 ($50.00) Dollars for the impairment of the use of his foot from any other injury that may have resulted thereto in the loss of said toes; as petitioner Harry Hanbury specifically denies that there is any other injury to petitioner Louis Langston's foot than the loss of said toes.
"VII. Petitioners further show that at the time of said accident, Louis Langston was employed by the said Harry Hanbury and Red Iron Drilling Company equally (each being responsible for half of said wages) at a wage of One Hundred Fifty and No/100 ($150.00) Dollars per month and he is entitled to the maximum compensation of Twenty and No/100 ($20.00) Dollars per week for the number of weeks provided by law for said injury, or twenty weeks compensation for loss of the great toe and an additional ten weeks compensation for the loss of each of three other toes.
"VIII. Petitioners further show that Harry Hanbury has already paid the medical expenses incurred by Louis Langston in attending to said injured foot, and said services are not considered as a part of this settlement.
"IX. Your petitioners show, however, that they have agreed to compromise their differences as contemplated, insofar as any and all injury to said foot is concerned including loss of said toes, under the provisions of said Employers' Liability Act, and particularly Section Seventeen thereof, by the payment to said Louis Langston of the sum of Five Hundred Fifty and No/100 *Page 417 
($550.00) Dollars cash in a lump sum settlement, and the payment of all hospital and medical expenses that have already been paid by the said Harry Hanbury, this to cover only the liability of Harry Hanbury and not to release Red Iron Drilling Company from its liability for one-half of said compensation.
"X. Petitioners further show that this settlement is made without the said Harry Hanbury in any way admitting any liability herein as he distinctly denies that said injury was accidental and he denies that there is any injury to any of Louis Langston's foot other than the complete loss of a great toe and two small toes, and the partial loss of the third small toe, but the parties hereto are making this compromise settlement for the purpose of preventing and putting an end to litigation and to adjust their differences by mutual consent, which each of them prefer to the hope of gaining, balanced by the danger of losing."
The joint petition was presented to Judge E.P. Mills, one of the judges of the District Court for Caddo Parish, who, after discussing the facts of the case with plaintiff, at the time present with his counsel, and advising him that the agreement when approved by the court would completely terminate any and all claims on compensation account he held against the defendant, signed the following judgment, to-wit:
"In this case by reason of the joint petition and agreement and compromise settlement, made by and between Louis Langston and Harry Hanbury, petitioners herein, the Court having satisfied itself that the law and the evidence are in favor thereof, and that said settlement is reasonable:
"It is therefore ordered, adjudged and decreed that said compromise lump sum settlement is hereby approved and accordingly that Louis Langston is hereby awarded judgment against Harry Hanbury in the full sum of Five Hundred Fifty and No/100 ($550.00) Dollars, payable all in cash at this time. Louis Langston's rights against Red Iron Drilling Company are reserved."
This occurred on October 14, 1939, and on that date plaintiff was paid the $550. The matter, of course, was considered finally closed by all concerned and doubtless would have remained in permanent state of repose but for the decision in the Puchner case, Puchner v. Employers' Liability Assur. Corp., 198 La. 921,5 So.2d 288, 292.
In the present suit plaintiff realleges the basic facts set up in the joint petition, supplementing the same with the following allegations, to-wit:
"VI. That since the operation on petitioner's foot, it has developed that said operation was unsuccessful and that continuously, even up to this date, bones in said foot gradually work out through the foot on which the toes were amputated, causing inflammation as well as continuous soreness with great danger of blood poisoning setting up; that said foot is now and has been very tender and your petitioner is unable to stand or walk on it for any great length of time.
"VII. That as a result of said accident, petitioner is totally and permanently disabled and unable to pursue the only work he is competent to perform; that petitioner, by a previous accident, lost the greater portion of his left hand, which, coupled together with the loss of the foot as set forth, rendered him permanently disabled to do oil field work, said work being the only work your petitioner is competent to perform.
"IX. That the defendant, Harry Hanbury, on or about October 14, 1939, negotiated a settlement with your petitioner for and in the sum of $550.00 as will be reflected by suit number 77,938 on the docket of this Honorable Court, which record is made a part hereof by reference.
"X. That your petitioner was laboring under a misapprehension as to the law with reference to said settlement in that he did not know that under the workman's statute for the State of Louisiana he was entitled to more than was paid him by the said defendant, Harry Hanbury, your petitioner accepting $550.00 together with medical fees, believing that the settlement was the maximum amount that could be recovered under the laws of the State of Louisiana, also believing at the time of said settlement that he would be able, at some future date, to resume his oil field work.
"XIII. That as a result of the injuries he was totally and permanently disabled from the date of said accident; that petitioner was mistaken in his belief that he would be able to continue oil field work and that the settlement was based upon simple speculation as to the extent of petitioner's disability, all of which will more fully appear from said suit, Number 77,938 on the docket of this Honorable Court, which suit is made a part hereof by reference; *Page 418 
that the judgment rendered in said suit number 77,938 is contrary to law and is condemned by the statutes and should be annulled and set aside, and petitioner should have judgment in his favor and against the defendant, Harry Hanbury, compensation at the rate of $15.00 per week for 400 weeks, being one-half of the wages received and one-half penalty, less the sum of $550.00 already paid, together with legal interest on each installment from its maturity date until paid."
He prays that the judgment rendered on the joint petition be annulled and set aside as well as the compromise, and that he now have judgment against defendant adjudging him to be permanently totally disabled and condemning defendant to pay to him compensation at the rate of $15 per week for a period of 400 weeks, less the sum of $550 heretofore paid.
The far-reaching rule announced in the Puchner case is reflected from the following excerpts therefrom:
"* * * A review of the entire transcript unmistakably shows, as was found by the trial judge, that the attending physician informed the plaintiff, as he did the defendant insurance company, of his improvement and the belief that he would be able to return to work within a reasonable time, and that the plaintiff himself at that time believed he would shortly recover. The only possible matter which could have been uncertain was the duration of plaintiff's disability, and in our opinion it would be in direct violation of the letter and spirit of the act to sanction speculation with respect to the duration of an employee's disability, for the primary object of the act `was to provide an employee, whose wages were discontinued as a result of an injury sustained while serving his master, with funds to subsist on until he could return to work. * * *' Barr v. Davis Bros. Lumber Co., 183 La. 1013, 165 So. 185, 188.
* * * * * *
"Compromises are not provided for in any of the various provisions of the act and there is no room for them with respect to the mandatory provisions of the act, consequently they should not be sanctioned except where the letter or spirit of the law justifies them. For an example, where there is a serious and bona fide dispute as to the employer's liability under the act."
Puchner compromised his right to compensation with his employer's insurer for the payment of $500, in a lump sum. All persons in interest or having contact with the matter were in error as to the duration of his disability. At the time of the compromise he was known to be totally disabled, and on trial it was proven beyond doubt that the disability was permanent. This being true, manifestly the $500 paid in keeping with the compromise was grossly less than the amount due him discounted at eight per cent per annum. The compromise, as approved, violated the mandatory terms of Subsection 9 of Section 8 of the Employers' Liability Act, Act No. 20 of 1914, as amended by Act No. 242 of 1928, which prescribes the rate of discount in such a case. However, it was necessary that the case be tried on its merits before it could be determined if the compromise agreement violated said law.
There is no doubt that plaintiff here was temporarily totally disabled from the loss of his toes and injury to the foot proper. Whether such disability would be permanent or would continue beyond what might be considered a temporary period was dependent upon progress of healing and possible infection. Injuries of this character which produce permanent total disability are compensable under the general disability clauses of the act and not under the specific injury provisions, where the injured person is a common laborer, Act No. 20 of 1914, § 8, subsec. 1 (b). Barr v. Davis Bros. Lumber Company, 183 La. 1013,165 So. 185; McGruder v. Service Drayage Company, Inc., 183 La. 75,162 So. 806; Thornton v. Mercer, La.App., 199 So. 407.
If plaintiff's disability has continued to the filing of the present suit, October 11, 1941, as by him alleged, obviously there was error on his part and that of defendant and their counsel, with respect to the duration of the disability. If this be true, proof of such fact will be sufficient under the Puchner case to set aside the compromise and the judgment authorizing its consummation. A trial on the merits is required to determine the true facts.
Defendant argues that the present case is readily distinguishable from the Puchner case in material respects and points out that Puchner was not represented by counsel at the time of the confection of the compromise, but was induced to enter into it by the agent of his employer's insurer, whereas in the present case plaintiff had the benefit of capable counsel of his own selection, who accompanied him to the District *Page 419 
Judge when the joint petition was submitted for approval. It is also pointed out that Puchner was imposed upon; in fact, legal fraud was practiced upon him. As we understand the language of the court in the Puchner case, good or bad faith in the confection of the compromise of an injured workman's right to compensation, when consummated in violation of the mandatory provisions of the Employers' Liability Act, has not a decisive influence. Good faith in the Puchner case induced the court on rehearing to not inflict the penalty.
The court in the Puchner case emphatically laid down the principle that the duration of an injured workman's disability could not be made the subject of speculation and could not be foreclosed by compromise.
It is also argued that there was a real dispute between plaintiff here and the defendant as regards liability for any compensation in that defendant contended that the injuries to the foot were not the result of accident but were intentionally inflicted. Whether this contention has any basis in fact may only be determined by trial on the merits. Since it appears that plaintiff recovered compensation from the Red Iron Drilling Company, his other employer, in the United States District Court, evidently this defense of no accident, if tendered, was rejected.
We are of the opinion that the exceptions of no cause and no right of action are not well founded and were improperly sustained by the lower court.
We are also of the opinion that the plea of prescription of one year is not tenable. Section 31 of the Employers' Liability Act, as amended by Act No. 85 of 1926, in part, reads: "* * * That in case of personal injury (including death resulting therefrom) all claims for payments shall be forever barred unless within one year after the accident or death of [sic] the parties shall have agreed upon the payments to be made under this Act or unless within one year after the accident, proceedings have been begun as provided in Sections 17 and 18 of this Act. * * *".
It is clear that this section applies to cases which have not been closed or attempted to be closed by a compromise embracing a lump-sum payment in violation of Subsection 9, Section 8 of the act. In cases where such a compromise has been made, the claimant has two years in which to sue to annul it and recover the compensation due him, plus an additional fifty per cent thereof less payments made. This right is expressly given in said Subsection 9 of Section 8. The present suit was filed three days prior to the expiration of the two year period.
For the reasons herein assigned, the judgment appealed from is annulled, reversed and set aside, and the case is hereby remanded to the lower court for further proceedings. Costs of appeal are assessed against defendant. All other costs will await final judgment.