119 So.2d 136 (1960)
Worley POPE
v.
W. B. CONEY d/b/a W. B. Coney Lumber Company.
No. 4984.
Court of Appeal of Louisiana, First Circuit.
March 21, 1960.
*137 Iddo Pittman, Jr., Hammond, for appellant.
Ponder & Ponder, Amite, for appellee.
Before ELLIS, LOTTINGER, TATE, FRUGÉ and LANDRY, JJ.
LANDRY, Judge.
By virtue of this appeal plaintiff appellant Worley Pope seeks reversal of the judgment of the lower court dismissing his demand for workmen's compensation benefits against his employer, W. B. Coney d/b/a W. B. Coney Lumber Company, upon an exception of prematurity filed by plaintiff's employer.
In this court defendant has filed a plea of prescription of one and two years as provided for by the appropriate provision of our Workmen's Compensation Law.[1]
Plaintiff's petition alleges plaintiff was employed at a base pay of $1.04½ per hour and that he was injured on December 14, 1954, while working within the scope and during the course of his employment by defendant. It further sets forth that since his injury plaintiff has been paid compensation at the rate of $27.17 per week but that his correct compensation rate is $30 per week. Judgment is prayed for against defendant in the sum of $30 per week for 400 weeks.
Defendant's plea of prematurity is based on the premise that plaintiff's asserted $1.04½ hourly wage is correct but that defendant was employed only 40 hours per week, therefore, his weekly compensation rate should be computed by use of the formula 65% × $1.04½ × 40, from which it follows that the amount of $27.17 admittedly paid is the correct amount to which plaintiff is entitled. In this connection, plaintiff contends that since his hourly rate of pay was $1.04½, his weekly earnings should be computed on a 48 hour week (six days at eight hours each) upon which basis the formula would be 65% × $1.04½ × 48 or $32.64, reducible to the admitted maximum of $30 per week in effect on the date of his injury.
The evidence adduced on the trial of defendant's exception of prematurity consists solely of the testimony of one witness, namely, Maude B. Hughes, Secretary and Bookkeeper of defendant concern. Her evidence shows that from the date of plaintiff's injury (December 14, 1954) until July 14, 1958, defendant paid plaintiff compensation at the rate of $27.17 weekly aggregating the sum of $4,999.22. Over the timely objection of counsel for plaintiff the record shows that in addition to weekly compensation payments made, defendant incurred medical expense in the treatment of plaintiff's injuries in the sum of $1,347.40 which defendant maintains is in excess of the statutory limit for which defendant is liable. Despite prior objection by counsel for plaintiff, evidence was also introduced by defendant establishing that defendant advanced plaintiff additional compensation in the form of goods and merchandise sold on credit in the amount of $1,361.96. Defendant contends the excess medical payments expended in plaintiff's treatment and the amount of compensation advanced in the form of merchandise should be taken into consideration and defendant given credit therefor.
Conversely, plaintiff maintains the trial court erred in admitting evidence relative to excess medical payments and advancement *138 of goods to plaintiff by defendant on the trial of the exception of prematurity. In this connection, learned counsel for plaintiff argues that these alleged credits are of no relevancy in disposing of an exception of prematurity and are germane only to issues presented on trial upon the merits. In this regard, we believe the position of counsel for plaintiff well taken, our reasons for this conclusion being hereinafter set forth.
The issue thus presented for adjudication is one which has been before the appellate courts of this state on numerous occasions. The principle involved is simply whether or not plaintiff has been receiving the compensation to which he is entitled under our Workmen's Compensation Law. If defendant was paying the maximum rate of compensation due plaintiff on the date of the filing of this suit, defendant's exception of prematurity was well taken and plaintiff's suit properly dismissed. If the full measure of compensation due plaintiff is $30 weekly as plaintiff alleges, instead of $27.17 as contended by defendant, the trial court committed error in sustaining the exception and dismissing plaintiff's suit. More specifically we are called upon to decide the question whether a five or six day week should be used in determining the amount of plaintiff's weekly earnings for the purpose of ascertaining the compensation benefits to which he is entitled herein.
The question presented has been the source of some confusion among the appellate courts of this state, the decisions indicating a degree of conflict. It would seem, however, that recent decisions of the Supreme Court have resolved the uncertainties and apparent conflicts heretofore existing and establish a criteria which, in our humble opinion, is not only decisive of the matter but also clearly and easily understood.
In Jarrell v. Travelers Insurance Co., 218 La. 531, 50 So.2d 22, 23, the Supreme Court of this state, with the Honorable John B. Fournet as the organ of the court, held that to determine an employee's weekly earnings for purposes of fixing compensation due, the daily rate of pay must be multiplied by six (the greatest number of days an employee can work). We quote the following pertinent language appearing in the Jarrell case, supra:
"In the case of Rylander v. T. Smith & Son, Inc., 177 La. 716, 149 So. 434, this court had occasion to determine the amount of compensation to be paid per week to a longshoreman employed intermittently, and after reviewing the history of the Act, particularly Section 8 thereof in its present form (quoted in part above), adopted the view followed by the Courts of Appeal for the Parish of Orleans and the Second Circuit, namely, that an injured workman is entitled to compensation at the rate of pay in effect on the actual day of the injury, based not upon the number of days per week he was employed but upon the number of days he could possibly have secured employment had he not been injured, or six days a week; and repudiated the basis of computation approved in two previous cases by the Court of Appeal for the First Circuit in arriving at the daily wage. In the course of the opinion it was very aptly pointed out by the Court: `The workman's compensation statute is not a statute allowing the workman damages for injuries sustained in the course of his employment even through the negligence or fault of his employer. It is essentially insurance against the loss or diminution of earning capacity * * *,' the Court observing further that in the case of permanent total disability the accident and injury have the unquestioned effect of depriving the person of his ability to work at full time employment in the future. 177 La. at page 720, 149 So. at page 435.
"This view was adhered to in the later case of Calhoon v. Meridian Lumber *139 Co., Inc., 180 La. 343, 156 So. 412, in which one of the questions was the weekly allowance payable, and the amount was again computed on the basis of a six day week even though, for several months prior to the accident, due to economic conditions, the injured man had been employed only three days a week. The logic of these two decisions is consonant with the object of the Act as announced by this Court in the case of Barr v. Davis Bros. Lumber Co., 183 La. 1013, 165 So. 185, wherein we said: `The main object of the legislators in enacting the Employer's Liability Act was to provide an employee, whose wages were discontinued as a result of an injury sustained while serving his master, with funds to subsist on until he could return to work.' 183 La. at page 1023, 165 So. at page 188. See, also, Puchner v. Employers' Liability Assur. Corp., 198 La. 921, 5 So.2d 288.
"The cases relied on by the defendant, namely Durrett v. Unemployment Relief Committee, 152 So. 138; Young v. Unemployment Relief Administration, 154 So. 642; Gay v. Stone & Webster Engineering Corp., 191 So. 745, and Abbott v. Swift & Co., 6 So.2d 683, are Court of Appeal decisions and, while persuasive, are not controlling; furthermore, a study and analysis of the cases will show that the first two are inapplicable because of a peculiar factual situation, and in the other two the determinations are not inconsistent with the holding of this Court in the Rylander case."
We held in Evans v. Louisiana State Board of Education, 85 So.2d 669, in conformity with the ruling in the Jarrell case, that the weekly wages of an employee who worked two nights a week for which he received wages of $9 a night must be computed on the basis of a six day week for purposes of determining compensation due by his employer.
The subject matter presently being considered was again before the Supreme Court on a writ of certiorari issued in Carrington v. Consolidated Underwriters, 230 La. 939, 89 So.2d 399, in which case the employee involved was shown to have been receiving wages at the rate of 85¢ per hour for a 40 hour week. The Court of Appeal (Second Circuit, 80 So.2d 427) had ruled, predicated upon Caddo Contracting Company v. Johnson, 222 La. 796, 64 So.2d 177, that compensation payable must be based on aggregate earnings determined by multiplying the daily rate of pay by the number of days customarily worked. In reversing the Court of Appeal, Second Circuit, the Supreme Court stated [230 La. 939, 89 So.2d 404]:
"After determining an employee's daily wage, the six day week is to be employed in calculating his weekly wage. If he is injured, he is deprived of this ability to work six days per week, and remuneration is awarded him for this deprivation. This test must be applied regardless of the number of days he works for the particular employer, by whom he is employed at the time of his injury."
We believe the foregoing language appearing in the Carrington case, supra (as well as other pronouncements therein appearing) has resolved all uncertainty and confusion heretofore existing with respect to the question of whether a five or six day week shall be used in calculating weekly wages under our Workmen's Compensation Law. We interpret the language employed by the Supreme Court in the mentioned case as holding that, regardless of the number of days or hours an employee actually works, weekly wages shall be calculated by first determining daily wage and then employing the six day week.
Defendant's reliance upon the holding in Morris v. Kemp, 110 So.2d 854 (decided in this court) is not well founded because of an obvious factual distinction between the cited case and the case at bar. In the Morris *140 case, the injured employee was employed at a fixed weekly salary irrespective of the number of hours worked. We believe our decision in the Morris case proper inasmuch as we find nothing in the Carrington case indicative of intention to alter previous decisions holding that compensation rate of employees paid a fixed weekly wage must be computed on the basis of weekly remuneration received.
The record is devoid of evidence showing plaintiff was employed at a fixed weekly wage. Under such circumstances, plaintiff's compensation rate must be computed by using a six day week. Carrington v. Consolidated Underwriters, 230 La. 939, 89 So.2d 399. It necessarily follows that plaintiff is entitled to compensation at the rate of $30 per week and the lower court was in error in sustaining defendant's exception of prematurity unless, as contended by defendant, the amount of excess medical payments and the value of goods sold plaintiff on credit may be applied and credited to compensation accrued herein.
Defendant's claim for credit because of payment of medical expense in excess of statutory limits is clearly without merit. It is the settled jurisprudence of this state that payment of medical expense above and beyond the requirements of the Workmen's Compensation Law is deemed a gratuity to the employee and may not be claimed by the employer as a credit against compensation due in the absence of agreement with the employee to that effect. No such agreement is alleged or shown by defendant in the case at bar, consequently defendant's claim for such credit must be denied. Quave v. Lott-Blaston Lbr. Co. Ltd., 151 La. 1052, 92 So. 678; Holliday v. Martin Veneer Co., 206 La. 897, 20 So.2d 173; Kinder v. Lake Charles Harbor and Terminal District, La.App., 31 So.2d 498.
We next consider defendant's claim for credit in the sum of $1,361.96 representing merchandise sold plaintiff which, if allowed, results in defendant having made an over-payment of compensation due to the date of the filing of this suit.
Whether the goods and merchandise sold plaintiff on credit were sold before or after plaintiff's injury is immaterial quoad the case at hand. The provisions of our compensation law clearly and expressly provides compensation payments due an injured employee shall be exempt from the claims of all creditors and from levy, execution, attachment or garnishment except under judgment for alimony in favor of certain designated persons.[2] In addition, it is specifically provided that voluntary payments by an employer in money or otherwise not due and payable when made, shall be credited only by shortening the period during which compensation shall be paid and not by reducing the amount of the periodical payments[3].
If the claim of defendant employer for credit for merchandise sold plaintiff is tendered by way of counterclaim, set-off, levy or execution, it is clearly barred by the unambiguous terms of LSA-R.S. 23:1205 exempting compensation benefits from claims *141 of all creditors save those expressly excepted therein. Claims of employers against employees (whether arising before or after the employee's injury) are not excepted from the effect of the statute and are consequently governed by its terms. We recognize, of course, the right of an employee to waive the benefits of the statute in question by express agreement in that regard, but no such agreement was alleged or proven upon the trial of the exception of prematurity in the case at bar.
Assuming defendant's claim for credit for articles advanced is predicated upon the principle such advances constitute voluntary payments, such contention is, nevertheless, without legal foundation with respect to defendant's plea of prematurity. The question of voluntary payments by an employer, in money or otherwise, not due and payable when made, addresses itself primarily to the issue of total compensation due and not the amount of weekly payments to which the employee may be entitled. As we have hereinabove pointed out, the provisions of LSA-R.S. 23:1206 lay down the rule that such payments may not be credited to the employer by reducing the amount of weekly payments but only by shortening the period during which weekly payments shall be made. It follows, therefore, the lower court erred in admitting evidence relative to voluntary advancement of credit to plaintiff by defendant and considering such evidence in connection with defendant's plea of prematurity. Considering this particular phase of the employer-employee relationship does not concern the employee's rate of compensation but rather the duration thereof, it should be inquired into only upon trial on the merits wherein decision is made on the issue of the number of weeks compensation shall be paid a particular employee.
There remains for disposition only the plea of prescription of one and two years filed on behalf of defendant pursuant to LSA-R.S. 23:1209. In his brief learned counsel for defendant cites no authority in support thereof other than the statute relied upon.[4] The plea of prescription is clearly without merit in view of the facts shown herein and the jurisprudence applicable thereto.
It has in numerous instances been held that the prescription of one year provided for in LSA-R.S. 23:1209 commences to run only from the date of the last compensation payment. In the instant case, the record shows plaintiff received compensation from the date of his injury on December 14, 1954, to July 14, 1958, one week subsequent to the filing of this suit. Under such circumstances, defendant's plea of prescription of one year is patently without merit and must be overruled. LSA-R.S. 23:1209, Arnold v. Solvay Process Co., 207 La. 8, 20 So.2d 407, Daigle v. Higgins Industries, La.App., 29 So.2d 374.
The plea of two years' prescription advanced by defendant is clearly without merit since proceedings are not barred when brought more than two years after the date of the accident but within one year of date of last payment of compensation.[5]
*142 For the reasons hereinabove set forth, the plea of prescription filed in this court on behalf of defendant W. B. Coney d/b/a W. B. Coney Lumber Company is overruled, the judgment of the trial court sustaining the exception of prematurity filed on behalf of defendant and dismissing plaintiff's suit is reversed and this cause remanded to the Honorable Twenty-first Judicial District Court, Parish of Tangipahoa, Louisiana, for further proceedings not inconsistent with the views herein expressed.
Reversed and remanded.
NOTES
[1] LSA-R.S. 23:1209.
[2] LSA-R.S. 23:1205"Claims or payments due under this Chapter shall have the same preference and priority for the whole thereof against the assets of the employer as is allowed by law for any unpaid wages of the laborer; and shall not be assignable, and shall be exempt from all claims of creditors and from levy or execution or attachment or garnishment, except under a judgment for alimony in favor of a wife, or an ascendant, or descendant."
[3] LSA-R.S. 23:1206"Any voluntary payments made by the employer or his insurer either in money or otherwise, to the injured employee or his dependents, and accepted by the employee, which, by the terms of this act, were not due and payable when made, may, subject to the approval of the court, be deducted from the payments to be made as compensation; provided, that in case of disability, such deduction shall be made by shortening the period during which compensation shall be paid, and not by reducing the amount of the periodical payments."
[4] LSA-R.S. 23:1209"In case of personal injury (including death resulting therefrom) all claims for payments shall be forever barred unless within one year after the accident or death the parties have agreed upon the payments to be made under this Chapter or unless within one year after the accident proceedings have been begun as provided in Parts III and IV of this Chapter. Where such payments have been made in any case, the limitation shall not take effect until the expiration of one year from the time of making the last payment. Also, where the injury does not result at the time of, or develop immediately after the accident, the limitation shall not take effect until the expiration of one year from the time the injury develops, but in all such cases the claim for payment shall be forever barred unless the proceedings have been begun within two years from the date of the accident."
[5] LSA-R.S. 23:1209 "* * * Where such payments have been made in any case, the limitation shall not take effect until the expiration of one year from the time of making the last payment."