DOMENGEAUX, Judge.
This is a workmen’s compensation suit. Plaintiff was employed by John tóicéíle d/b/a John Micelle Meat Packers of Lake Charles, and on August 19, 1968, as she was pushing a large metal cart of sausages, slipped, struck her left knee and injured it. Made defendant is Highlands Insurance Company, her employer’s compensation carrier. It was stipulated that the accident occurred while plaintiff was performing her duties arising out of and during the course and scope of her employment and that she had been paid workmen’s compensation by defendant at the then correct rate of $35.00 per week for 36 weeks and five days, plus $10.00 per week for 52 weeks, making a total of $1805.00, in addition to $2,765.27 in medicals.
After a trial on the merits, the trial court concluded that Mrs. Lacour had been paid full compensation for her injuries, and dismissed her suit, at her costs. Plaintiff has appealed to this court. The issues are:
1) Did the trial judge err in disallowing plaintiff’s claim for medical expenses arising from a fall on March 20, 1970, subsequent to her original injury, and
2) Did he err in applying the provisions of LSA-R.S. 23:1221(4) (h) (0) for a schedule loss rather than on the basis of total and permanent disability under 23 ¡1221, subsections 1, 2 and 3.
Immediately after her on-the-job accident, plaintiff consulted defendant’s physician Dr. G. E. Barham who ministered to her needs and on the following day, *613 inasmuch as Dr. Barham was not available, she consulted her personal physician, Dr. Robert O. Emmett who admitted her to the hospital. Dr. Edward W. Phillips, an orthopaedic surgeon was called in consultation. She remained in the hospital for approximately one week where she was given additional medication and physical therapy. She continued to complain of pain in the left knee area. She was later sent by her attorney to Dr. Charles V. Hatchette, an orthopaedic surgeon who, on November 8, 1968, performed surgery on plaintiff’s left knee removing therefrom the medical meniscus. She made a good recovery and was discharged on May 8, 1969 by Dr. Hatchette as being able to return to her work. She was paid maximum compensation by the defendant based on total disability through that date.
The plaintiff testified that she had fallen on three different occasions since being discharged by Dr. Hatchette and that she felt this was due to the fact “that her knee gave way”. She testified particularly to a fall which occurred on March 20, 1970 which necessitated her being admitted to a hospital by Dr. Love joy and treated there by Dr. Jerome W. Ambrister, an ortho-paedic surgeon. On April 4, 1970 she was discharged from the hospital. Later she was examined by Dr. Norman P. Morin, another orthopaedist.
In summary, plaintiff was examined or treated by four orthopaedic surgeons from the time of the accident of August 19, 1968 until the time of the trial of October 9, 1970 and all were called by her as witnesses to testify in her behalf. They all testified that plaintiff had recovered from her job injury of August 19, 1968 and that despite a mild residual disability, rated variously from 10 per cent to 20 per cent for an average of 15 per cent, plaintiff could return to her former job.
Dr. Phillips saw plaintiff shortly after the August 19, 1968 accident and again in October of 1969 and as of the latter date, he thought that she had a 10 per cent permanent partial disability of the left knee but that she was able to return to her previous work. Dr. Morin, who saw plaintiff once for consultation stated that he thought that plaintiff might, at times, suffer some discomfort, but not disabling pain, concluding that her knee would not feel as good as it did prior to the injury but the discomfort, based on subjective complaints only, would not be enough to prevent her from doing her work. Dr. Hatchette, plaintiff’s treating physician after the job accident, summarized his testimony at trial as follows:
“ * * * to sum up what I have done, I took out this ruptured meniscus which was very definitely damaged. As far as I could determine this patient made a good recovery with the exception of about three-quarters inch atrophy of the quadriceps mechanism, and I thought that she had a fifteen per cent residual disability, which I again thought was adequate and that she was able to return to the work that she had been performing.”
Dr. Ambrister, the orthopaedic surgeon who examined and treated plaintiff for her fall of March 20, 1970 was of the opinion that she was capable of continuing her regular work. Additionally all orthopaedic surgeons were satisfied that plaintiff’s fall of March 20, 1970 did not result from her knee injury in the job accident of August 19, 1968. Accordingly her claim for medical expenses for her fall must be rejected since she has failed to show that it resulted from her job accident. None of the medical experts who testified could establish any such relationship. Our jurisprudence allows medical expenses for a re-injury causally connected with the job accident. Plaintiff in this case, however, has failed to prove any such connection between her on-the-job accident August 19, 1968 and her fall of March 20, 1970.
The trial judge concluded, after hearing the medical testimony, that plaintiff suf *614 fered some minimal instability of the knee but it was such that it would not interfere with her ability to carry on her work. He concluded, based on the medical testimony that the instant case is one of permanent partial loss of use or function of the leg under LSA-R.S. 23:1221(4) (h & o). He concluded that the plaintiff suffered a disability of 15 per cent loss of use or function of the left leg. It is to be remembered that plaintiff was paid total compensation for 36 weeks and five days and $10.00 per week for an additional 52 weeks. Applying the provisions of LSA-R.S. 23:1221, 23:1202 and 23:1223 he concluded that the amount of compensation allowed for loss of use or function of a member was below the $10.00 minimum set out in LSA-R.S. 23:-1202, as it existed at the time of the accident herein, i. e. August 19, 1968. He concluded that the plaintiff had been paid compensation properly, in effect, for a period of 88 weeks and five days, which represented 36 weeks and five days through May 8, 1968 at maximum compensation, and 52 weeks thereafter at $10.00 per week.
We find no error in the trial court's computations. His findings are entitled to grant weight and should not be upset unless they are manifestly erroneous. It is evident that the plaintiff has failed to preponderate in either of her claims, i. e. that she is permanently and totally disabled and secondly that the alleged fall of March 20, 1970 is associated with her original injury.
There is no medical evidence to indicate any period of disability during recovery beyond that found by the trial judge.
Since the schedule award for loss of the use of function of a leg exceeded the amount of an award for a period of temporary total disability, the greater amount was awarded. Plaintiff has no grounds for complaint. And too, since she was found able to return to her previous employment, there is no basis for an award of partial permanent disability. Under the clear, uncontroverted medical testimony, plaintiff was not disabled functionally beyond May 8, 1968.
Plaintiff suggests that under the Louisiana Supreme Court, decisions of Barr v. Davis Bros. Lumber Co., 183 La. 1013, 165 So. 185 (1935) and McGruder v. Service Drayage Co., Inc., 183 La. 75, 162 So. 806 (1935) that she should be awarded compensation on the basis of total and permanent disability, for which she sued, rather than on a schedule loss. It is apparent that her argument is without merit. Barr and McGruder are now generally accepted as having settled the pre 1935 jurisprudential conflict over the applicability of the general disability and the schedule loss sections. This subject is comprehensively discussed in Malone’s Louisiana Workmen’s Compensation Law and Practice, at Section 279, page 345, et seq., and Prof. Malone concludes:
“In these cases [McGruder and Barr] the court adopted the unequivocal position that whenever the worker can show that he was wholly or partially disabled he is entitled to compensation for the period provided in the disability provisions of the Act, even though his disability arose from one of the specific losses set forth in the schedule.” Id. at 352.
In the instant case, plaintiff proved only that she was totally disabled during the period of her post surgical recovery through May 8, 1968 for which she was paid maximum weekly compensation benefits. She failed to prove compensible disability beyond this time, except for a schedule loss, for which she was also paid.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the plaintiff-appellant.
Affirmed.